STATE

v.

**David J. MANNING.**

No. 81–239–C.A.

Supreme Court of Rhode Island.

July 7, 1982.

Dennis J. Roberts, II, Atty. Gen., Henry Gemma, Jr., Asst. Atty. Gen., for plaintiff.

Corcoran, Peckham & Hayes, Kathleen Managhan, Newport, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of David J. Manning (Manning) from a judgment of the Superior Court convicting him of assault with a dangerous weapon.  We affirm.  The facts of the case are as follows.

On July 5, 1979, Manning and a friend named Deborah Groff (Groff) were parked in a Toyota automobile at a beach in Newport.  Ralph DeLullo (DeLullo) had previ-

---

ously parked his automobile at the same beach and was allegedly searching the area for a ring that he believed he had lost somewhere in the vicinity. DeLullo had been drinking at several bars in the city. In the course of his search he came upon the Toyota automobile and peered inside, pressing his face against the car window. Manning and Groff were startled and angered by this visual intrusion.

Manning emerged from the automobile, expressing his displeasure in no uncertain terms. DeLullo attempted to explain but fled in the face of Manning's aggressive behavior and expressions of disbelief. At this point Manning picked up a piece of driftwood of club-like proportions, and De-Lullo sought refuge within his automobile. While DeLullo was inside his automobile, Manning struck the automobile several times with the club. Although DeLullo was backing the car away, Manning testified that he assumed that DeLullo was attempting to drive into him with the automobile.

DeLullo left the beach area and attempted to find his way to the Newport Bridge. However, he became confused regarding the route and found himself in Washington Square in downtown Newport. At this point he again encountered the black Toyota containing Manning and Groff. Manning noted DeLullo's car and chased it through the streets of Newport and onto the Newport Bridge. The velocity of this chase was variously estimated as reaching speeds in excess of eighty miles per hour. It is not entirely clear from the evidence what Manning intended to accomplish; he stated that he wanted to view the license plate. It further appears, however, that Manning drove his vehicle alongside DeLullo's vehicle and that Groff leaned out of the passenger-side window and struck the left-front windshield of DeLullo's car with the same stick that Manning had previously used. This time the stick splintered the windshield, causing broken glass to fly into DeLullo's face.

The chase continued until both vehicles reached the toll booth. At this juncture Manning drove his vehicle in front of De-Lullo's car and both automobiles came to a halt. Manning again emerged from his car and struck DeLullo in the face. Thereafter, the two men struggled, and Manning eventually returned to his car and went back across the bridge to Newport. Ultimately Manning and Groff were charged with assault with a dangerous weapon and were tried in Newport County before a jury. The jury returned verdicts of guilty in regard to each, and the trial justice denied their motions for new trial. This appeal relates only to Manning's conviction.

In support of his appeal, Manning raises two issues. The first issue challenges the trial justice's instructions to the jury in respect to the elements of self-defense. The second issue consists of a challenge to the denial of the motion for new trial on the ground that there was insufficient evidence to justify a conviction for assault with a dangerous weapon. We shall deal with these issues in the order in which they are presented in defendant's brief.

■ We have examined the trial justice's instructions concerning self-defense, and we believe that those instructions reasonably set forth, as they should, all of the propositions of law that related to material issues of fact which the evidence tended to support. *See State v. Infantolino*, 116 R.I. 303, 307, 355 A.2d 722, 724–25 (1976); *State v. Crough*, 89 R.I. 338, 352, 152 A.2d 644, 652 (1959); *State v. Shea*, 77 R.I. 373, 376, 75 A.2d 294, 296 (1950). Although the trial justice declined to instruct the jury in accordance with language selected by defendant, viewing his instruction as a whole, we find that he appropriately outlined the salient and essential elements of law relating to self-defense. No more can or should be required of a trial justice. *See Mercurio v. Fascitelli*, 116 R.I. 237, 241, 354 A.2d 736, 739 (1976).

■ In support of his second issue, Manning argues that the trial justice erred in denying his motion for new trial on the ground that there was insufficient evidence to support the finding that he had committed assault with a dangerous weapon. In the course of decision on the motion for

new trial, the trial justice seemed to base his opinion upon the striking by Groff of the windshield of DeLullo's car in such a fashion as to be dangerous to the person "of the complaining witness." Manning argues that this finding is not supported in reference to him, because, he suggests, there was insufficient evidence to support a finding that he was acting in concert with Groff at the time that she wielded this dangerous instrument. In so arguing, Manning misconceives the thrust of the evidence presented. The trial justice carefully reviewed the evidence in the case and found that "both these defendants were upset, they were going to overtake and stop this vehicle no matter what the cost." He further found that the "uncontradicted speeds testified to were between 80, 90 and even 100 miles an hour on the bridge." The attempts to overtake and stop this vehicle involved the pulling alongside DeLullo's automobile by Manning, as the driver. Groff's striking of the windshield was in support of this general overtaking attempt. The trial justice had ample basis for determining that the two occupants of Manning's car were acting in concert. Certainly Manning's activities constituted more than mere presence at the scene of the assault by Groff. As we stated in *State v. Gazerro*, R.I., 420 A.2d 816, 828 (1980) (quoting *Johnson v. United States*, 195 F.2d 673, 675 (8th Cir. 1952)):

"Beyond mere presence, the circumstances must establish that a defendant

'shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed.' As the term aiding and abetting implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. 'It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient.' "[1]

From the facts of this case, in driving this pursuing vehicle and in attempting to overtake and halt the fleeing vehicle at any cost, Manning was certainly aiding and abetting in the action of Groff in her striking at the fleeing vehicle with a stick or club. Their action in recklessly trying to bring DeLullo's automobile to a halt, regardless of danger to themselves or to DeLullo, was a concerted action in which both participated fully. The trial justice's denial of Manning's motion for new trial was amply supported by the evidence presented.

For the reasons stated, Manning's appeal is hereby dismissed, the judgment of conviction is affirmed, and the papers in the case may be remanded to the Superior Court.

---

1. The term "aiding and abetting" is derived from G.L. 1956 (1981 Reenactment) § 11–1–3 which states that

"every person who shall aid, assist, abet, counsel, hire, command or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender is subject to by this title."