STATE

v.

**Sandalio HEREDIA.**

No. 83–625–C.A.

Supreme Court of Rhode Island.

June 6, 1985.

Arlene Violet, Atty. Gen., Timothy Conlon, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Chief of Appellate Div., for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of conviction of second-degree murder entered in the Superior Court. In support of his appeal, the defendant raises four issues. In light of our determination of one of the issues, it will be unnecessary to consider all of the points raised by the defendant. We shall, however, consider one issue that is dispositive and another issue that would be required in order to provide guidance for a new trial.

The facts pertinent to this appeal are as follows.

On April 30, 1982, David Morales was fatally stabbed in the city of Providence. Prior to the stabbing, a fight had erupted between the victim and defendant, Sandalio Heredia, at a drinking establishment known as Cecelia's Bar. After exchanging blows, the two contestants fell out the door. Carlos Morales (Carlos), the brother of the victim, then observed defendant pull out a knife and chase the victim down Broad Street. Carlos testified that he saw defendant make a stabbing motion with his hand.[1] Carlos then searched for his brother and found him lying on the opposite side of the street from the point where he had first seen him running. Carlos attempted to give the victim mouth-to-mouth resuscitation and then pulled a fire alarm, an action that caused a fire truck and an ambulance to respond. The police later arrested defendant at his home. Evidence disclosed that death was caused by a single stab wound several inches deep in which several branches of the pulmonary artery were found to have been cut. At the location where the victim's body was discovered, another man named Peavey was observed by the victim's brother to be present. Peavey was also arrested and charged with assault because of his conduct at the scene. (Peavey was intoxicated and disorderly but denied having anything to do with the death of the victim and also denied having seen anything unusual at the scene.)

## I

Prior to trial, counsel for defendant made a request for discovery in accordance with Rule 16 of the Superior Court Rules of Criminal Procedure. Among the responses made by the state to this request were a written statement made by Officer Osvaldo Castillo, a member of the Providence police department, and a statement by Officer John MacAndrew, who was on duty that night as Castillo's partner. These statements indicated that Officer Castillo had advised defendant of his *Miranda* rights in the Spanish language. The statement of Officer MacAndrew further indicated that he had placed Peavey in a police car and that Castillo had translated a statement given by Carlos Morales, the victim's brother, and had served as a witness to Carlos's statement.

Although the state had listed Officer Castillo as a potential witness, the report of his activities included in the state's response to a request for discovery did not completely describe his observations at the scene of the crime. Subsequently, defense counsel disclosed an intention to subpoena Castillo as a witness. However, defense counsel remained unaware of the full scope of Castillo's investigation. Thereafter, counsel for the state decided to call Castillo as a witness in order "to beat [defense counsel] to the punch."

When Castillo was called as a witness, counsel for the prosecution elicited from him a statement that he had noted a trail of blood leading from the point where the body was found all the way down to Parkis Avenue. This testimony was of crucial relevance since it corroborated Carlos Morales's testimony concerning his observation of the stabbing motion made by defendant to the body of the victim just outside the bar. This testimony would support the prosecution's theory that although the fatal blow was struck during the fight near Cecelia's, the victim ran a considerable distance before dropping on the other side of Broad Street beneath the tree where he was ultimately found by his brother. Nothing in the discovery material furnished by the state indicated that Officer Castillo had made such an observation in the course of the investigation or that he had done any more than serve in the capacity of arresting officer and interrogator in

---

**1.** On cross-examination, Carlos stated that he had seen the knife penetrate his brother's body.

Record at 119.

regard to certain of the actors in this incident.

When defense counsel heard this testimony, he immediately moved to pass the case. The trial justice declined to grant this motion but later did grant a motion that was made by defense counsel in the alternative (without waiving the motion to pass), and not objected to by the state, that this portion of Officer Castillo's testimony be stricken from the record. Somewhat later in the proceedings, the trial justice made the following statement to the jury:

"Ladies and gentlemen, the last witness before we adjourned at lunch was Osvaldo Castillo. In your absence, I have been listening to an argument by counsel as to whether or not his testimony was properly before the Court, and I have come to the conclusion that it was not. And I am therefore directing you to strike from your consideration all of Officer Castillo's testimony. In your deliberations, you will not include Officer Castillo's testimony."

The question presented is not the propriety of allowing this testimony to be presented in light of the failure of the state to provide full discovery under the provisions of Rule 16 since the trial justice has already determined that the testimony should not have been brought before the court. With this finding we agree. The sole question is whether the remedy of striking this testimony and admonishing the jurors not to consider it was adequate in the circumstances. We do not feel that this remedy was adequate.

As we have pointed out in a series of cases, including *State v. Concannon*, — R.I. —, 457 A.2d 1350 (1983); *State v. Diaz*, — R.I. —, 456 A.2d 256 (1983); *State v. Coelho*, — R.I. —, 454 A.2d 241 (1982); and *State v. Darcy*, — R.I. —, 442 A.2d 900 (1982), defense counsel has the right to rely upon state responses to requests for discovery as being forthright and complete. We have also noted in *Darcy, supra,* that when defense counsel's expectations are wholly shattered at trial by an unexpected disclosure of previously unanticipated testimony, only a mistrial could eradicate the prejudicial effect caused by the violation of the discovery rule. In the case at bar there seems to be no question from the tenor of the direct examination by counsel for the prosecution that he knew precisely the information that he sought to elicit from Officer Castillo. Certainly, the facts concerning the investigation by Castillo and the following of the trail of blood were developed in the direct examination only in a fashion that could have been done by examining counsel in circumstances wherein counsel was thoroughly familiar beforehand with the information sought. Consequently, the failure to disclose this information in advance was, at best, a violation of the continuing duty to update discovery materials. The fact that defense counsel, relying upon the discovery materials that had been furnished, had intended to subpoena Officer Castillo as a witness does not in any way palliate the effect of this Rule 16 violation. Consequently, we are constrained to view this violation not as inadvertent but as deliberate, as a part of the state's trial strategy. Therefore, as we stated in *Concannon*, — R.I. at —, 457 A.2d at 1353, "we will grant a new trial without inquiry into the degree of harm caused by the misconduct." Here, a fortiori, a new trial must be granted since the effect of the disclosure of this extremely crucial testimony was unquestionably prejudicial to defendant. The remedy of admonishing jurors to disregard crucial evidence, after they have already had such evidence presented to them, has long been regarded as more illusory than real. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

II

Another issue raised by defendant relates to the turning off of a recording device during the grand jury hearing in violation of Rule 6(e) of the Superior Court Rules of Criminal Procedure. No one disputes that in the course of testimony being

given to the grand jury by Detective Robert E. Trafford of the Providence police department, the recording was interrupted at the request of Detective Trafford. This interruption of the recording was raised in the trial court in support of a motion to dismiss the indictment. A justice of the Superior Court denied the motion on the ground that there was no showing of prejudice. In support of its position in the Superior Court, the prosecution presented an affidavit signed by Detective Trafford which indicated that the portion of his statement which was unrecorded dealt only with the subject matter of the assignment of detectives to investigate this crime. Detective Trafford in his affidavit set forth that had he been a day detective and had the case assigned to him, he might have investigated the case a little differently, including interrogating the bartender at Cecelia's. It is obvious from the affidavit that the subject matter of his colloquy that was not recorded in no way related to the guilt or innocence of the accused and certainly did not deal with any exculpatory evidence that might be of assistance to the accused.

There is no question that Rule 6(e) of the Superior Court Rules of Criminal Procedure now requires that "[a] stenographic or other record shall be made of all proceedings before the grand jury other than its deliberations and voting." The defendant argues that the failure to record even this colloquy should be grounds for dismissing the indictment. We disagree. We decline to adopt a per se rule of dismissal for every violation of Rule 6(e) without regard to its nature or the effect upon the quantum of evidence presented to the grand jury, the presence or absence of exculpatory information, or the ability of the defense to use grand jury testimony for impeachment purposes. Even though this court would certainly encourage faithful observance of the requirements of Rule 6(e), the remedy suggested by defendant is unnecessarily drastic and fails to take account of the relevance and materiality of the unrecorded material. We believe that an undifferentiated response to the lack of observance of this rule would enhance respect neither for the law nor for the Superior Court Rules of Criminal Procedure.

Although we admonish the Office of the Attorney General faithfully to observe the requirements of Rule 6(e), the facts of this case would make the recommended response of dismissal an example of unjustified overkill. Consequently, we believe that the Superior Court justice was correct in declining to grant the motion to dismiss the indictment.

For the reasons stated, the defendant's appeal is sustained in part. The judgment of conviction is vacated; the papers in the case may be remanded to the Superior Court for a new trial.