STATE

v.

Brian FERNANDES.

No. 86–140–C.A.

Supreme Court of Rhode Island.

June 2, 1987.

**496**

James E. O'Neil, Atty. Gen., Thomas Dickinson, Annie Goldberg, Asst. Attys. Gen., Providence, for plaintiff.

William C. DiMitri, Jackvony & DiMitri, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case is before us on the defendant's appeal from a judgment of conviction for

second-degree murder and assault with intent to murder. We affirm the conviction.

The pertinent facts of the case are as follows. On January 2, 1984, defendant, Brian Fernandes (Fernandes), and two companions, Arthur Denham and David Medeiros,[1] traveled from Fall River, Massachusetts, to the city of Providence for a night on the town. Their purpose in coming to Providence was to see some topless dancers. Their adventures began at the Peppermint Lounge, a topless establishment, where Fernandes consumed about four to five beers and a couple of shots of whiskey within a period of one and one-half hours. Because the drinks were so expensive there, the trio decided to move on to other topless bars. They were hampered in their plans, however, because Fernandes did not have an identification card and was prohibited from entering the other topless bars.

Consequently, Fernandes, Denham, and Medeiros drove to the Weybosset-Dorrance-Street section of Providence and ended up at a bar known as LaBoheme at about 9:15 p.m. Fernandes and his two buddies ordered drinks and introduced themselves to Joseph Moretti and his friend Dennis Fontaine. A disturbance concerning the price of drinks and involving Fernandes and his two pals occurred shortly thereafter. The three of them were asked to leave the bar. The three, along with Fontaine and Moretti, proceeded up the street to the Mira Bar.

At the Mira Bar Fernandes, Denham, Medeiros, Fontaine, and Moretti made their way to the dance floor and began to dance. Within five or ten minutes an altercation erupted on or near the dance floor between Fernandes, Denham, and Medeiros and some other patrons of the bar. Fontaine threw himself into the fray, siding with the patrons against Fernandes and his two friends. The disturbance was quickly squelched by two bouncers, and Fernandes, Denham, and Medeiros were escorted out of the establishment. Fontaine left after

1. Denham and Medeiros were charged in this incident as codefendants. Medeiros was indicted for murder, assault with intent to murder, and conspiracy to commit murder while Denham was indicted only for conspiracy to murder. The defendant, Fernandes, was tried separately from the others.

them; Moretti left a few minutes after Fontaine.

Once out on the street, Fontaine yelled to Fernandes that he would "take you [expletive] on." As Fontaine came toward Fernandes, Denham and Medeiros came to their friend's aid. The three companions jumped Fontaine, and Fernandes pulled a knife from his coat and fatally stabbed Fontaine in the chest. The trio then chased Moretti, who had witnessed the attack on Fontaine, up the street. Fernandes stabbed Moretti three times in the back. The three companions were apprehended by the police moments after fleeing the scene; Fernandes's blood-stained knife was still in his possession.

Fernandes was indicted by a Providence grand jury on counts of murder, assault with intent to murder, and conspiracy to commit murder. Following a jury trial, Fernandes was found guilty of second-degree murder in the death of Dennis Fontaine and guilty of assault with intent to murder Joseph Moretti.[2] Fernandes's motion for a new trial was heard and denied on October 26, 1984.

Fernandes raises four issues on appeal, three of which concern testimony he considers so prejudicial that it denied him a fair trial. Fernandes also claims that he was entitled to a dismissal of his indictment because a portion of the grand jury proceedings allegedly was not stenographically recorded as is required by Rule 6(e) of the Superior Court Rules of Criminal Procedure. Further facts will be supplied as is necessary to consider these issues.

I

The first two issues raised by Fernandes involve the testimony of James McLaughlin during the state's case in chief. McLaughlin testified that while walking to the Mira Bar on the evening of January 2, 1981, he encountered an individual who offered to sell him cocaine.

"Q: Now along the way to the Mira Bar did you have any contact with some people?

"A: Yes, I did.

"Q: And where exactly were you at the time when you first had contact with people?

"A: In front of what you call the No Name Bar.

\*　　\*　　\*　　\*　　\*　　\*

"Q: And can you describe what happened when you had contact with these people?

"A: This person came up to me and asked me if I wanted to buy any cocaine."

At that point defense counsel objected, moved to strike the answer, and requested a conference at side bar. At side bar counsel moved to pass the case, arguing that evidence of other criminal activity is generally inadmissible to show that a defendant is a person of bad character and criminal propensities. *See generally State v. Pacheco*, 481 A.2d 1009 (R.I.1984); *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978).

The trial justice sustained the objection but denied the motion to pass, indicating to the defense, "I agree with you. The only thing is no one said it was your guy. That is the difference." The following exchange then took place between the prosecutor and the trial justice. "[Prosecutor]: I expect the testimony to be that his guy (referring to Fernandes) was the person that said that.

"The Court: Do you want me to pass this case?

"[Prosecutor]: Absolutely not.

"The Court: You had better not ask that question.

"[Prosecutor]: I'd ask for a recess to reinstruct my witness around it, because I think he is going to say that.

"The Court: I think you had better. Something like that is highly prejudicial."

---

**2.** At the close of all the evidence the trial justice granted Fernandes's motion for a judgment of acquittal on the conspiracy count.

Thereafter the trial justice ruled that evidence of other criminal activity was inadmissible except to show a scheme or plan. He indicated, however, that the testimony had not reached a point where Fernandes was prejudiced because Fernandes's name was never mentioned. After a brief recess, McLaughlin returned to the witness stand and testified as follows.

"Q: Mr. McLaughlin, after the incident that you described, did you come upon three individuals?

"A: Yes, I did.

"Q: Did one of these three say anything to you?

"A: Yes he did.

"Q: And what was said?

"A: He said there was a fag bar on the corner."

McLaughlin then attributed that statement to Fernandes.

Fernandes argues that the elicited testimony regarding the cocaine coupled with the trial justice's failure to give a cautionary instruction deprived him of a fair trial because a reasonable juror would have inferred from all the surrounding testimony that it was in fact Fernandes who offered to sell the cocaine to McLaughlin. According to Fernandes, once the trial justice chose not to pass the case, he was duty bound to issue a cautionary instruction. We disagree.

■ A decision by a trial justice on a motion to pass a case and declare a mistrial lies within the sound discretion of that trial justice. *State v. Brown*, 522 A.2d 208 (R.I. 1987); *State v. Ucero*, 450 A.2d 809 (R.I. 1982). The trial justice's decision concerning a motion to pass is to be accorded great weight and will not be disturbed on appeal unless it is clearly wrong. *Brown*, 522 A.2d at 210; *State v. Caprio*, 477 A.2d 67, 73 (R.I.1984).

When a defendant objects to a remark as prejudicial, the trial justice is obliged to evaluate the potential prejudice of the statement or question on the outcome of the case by examining the statement in its factual context. *State v. Collazo*, 446 A.2d 1006 (R.I.1982). We have stated that prejudice exists when the challenged comment or question "so inflames the passions of the jury as to prevent their calm and dispassionate examination of the evidence." *Brown*, 522 A.2d at 211; *State v. Mancini*, 108 R.I. 261, 274 A.2d 742 (1971).

■ In this case, McLaughlin indicated that he came upon "some people," one of whom offered to sell him cocaine. He never stated that Fernandes was the one who offered to sell him the drugs; moreover, he never indicated that the "some people" he referred to were Fernandes, Denham, and Medeiros. In addition, the prosecutor's first question to McLaughlin following the brief recess, in our opinion, would have led reasonable jurors to assume that McLaughlin had encountered two distinct groups of individuals on the way to the Mira Bar.

In these circumstances, we cannot say that McLaughlin's statement was so prejudicial as to inflame and arouse the passions of the jury. Therefore, we do not find the trial justice to have erred in denying the motion to pass or in not issuing a cautionary instruction to the jury.

II

The next issue raised by Fernandes concerns McLaughlin's testimony on direct examination that he heard one of the three codefendants, but not Fernandes, proclaim, " 'We are going to kill a fag.' " Defense counsel initially objected and moved to strike McLaughlin's response but then withdrew the objection saying, "On second note I'd like to be heard at the side bar."

Defense counsel, at the side-bar conference, again moved to pass the case, reasoning that someone other than Fernandes had made the comment and no evidence existed to establish that Fernandes had heard it, that the state must prove the existence of a conspiracy before such a statement could be introduced, and finally that any mention of dying in a murder case is prejudicial. The trial justice denied the motion to pass, finding the statement to be "an admissible statement under the circumstances." Fernandes never requested that a cautionary or limiting instruction be given to the jury either immediately after the introduction of

the statement or after the judgment of acquittal on the conspiracy charge had been granted.

Fernandes contends on appeal that the statement was highly prejudicial; however, he does not contest the admissibility of the statement at the time it was originally offered. *See State v. Bracero*, 434 A.2d 286 (R.I.1981) (statements made by coconspirators during and in furtherance of the conspiracy are admissible against a defendant under the coconspirator exception to the hearsay rule). He argues instead that its admission into evidence and the trial justice's subsequent failure to cure the prejudice by issuing a cautionary instruction after granting the judgment of acquittal deprived him of a fair trial. The trial justice should have either issued a cautionary instruction or declared a mistrial. This argument is untenable.

■ We have often indicated that a party must request an appropriate cautionary instruction in order to preserve for appeal a claim regarding the admission of prejudicial statements. *State v. Lemon*, 478 A.2d 175, 181 (R.I.1984). Fernandes, in this case, never requested a cautionary instruction, nor does the record demonstrate that seeking such an instruction would have been futile or ineffective. Therefore, we find the issue not to have been properly preserved for our review.

■ Even were the issue properly before us, however, it is our opinion that the absence of a cautionary instruction was harmless. The fact that the conspiracy charge never went to the jury, that Fernandes testified on his own behalf and admitted stabbing Fontaine and Moretti, and that the jury rendered a verdict of second-degree, not first-degree, murder all indicate that the codefendant's statement about killing a fag had little significance in the minds of the jurors.

### III

The third issue for our consideration concerns the admission into evidence of Fernandes's escape status. At the time of his arrest Fernandes was an escapee from the Bristol County House of Corrections in Massachusetts. During pretrial proceedings, defense counsel successfully submitted a motion in limine to exclude absolutely any reference to Fernandes's escape status. The state abided by the restriction during its case in chief; however, in presenting his defense, Fernandes took the stand and tried to persuade the jury that he acted in self-defense. While cross-examining Fernandes, the state elicited testimony from Fernandes that he was in fact an escapee from prison.

"[Prosecutor]: Where was your girlfriend living on January 2nd, 1984?

"[Fernandes]: Two-nine-three-one North Main Street in Fall River.

"[Prosecutor]: And where were you living on January 2nd, 1984?

"[Fernandes]: Same place.

"[Prosecutor]: And how long had you been living with your girlfriend?

"[Fernandes]: I'd say about two and a half months.

"[Prosecutor]: And where were you living prior to that?

"[Fernandes]: Let's see.

"[Defense Counsel]: Objection, your Honor.

"The Court: Overruled.

"[Fernandes]: I think I was staying at my brother's house. Staying at my brother's house.

"[Prosecutor]: You were staying at your brother's house prior to that?

"[Fernandes]: Yes.

"[Prosecutor]: And how long were you staying at your brother's house?

"[Fernandes]: Just a couple of months. No, about since June.

"[Prosecutor]: Where were you residing previous to that?

"[Fernandes]: I did a year, I was in jail.

"[Prosecutor]: You were in jail?

"[Fernandes]: Yes.

"[Prosecutor]: And did you complete your stay in jail?

"[Fernandes]: Yes.

"[Prosecutor]: You didn't escape from the jail?

"[Fernandes]: No. I completed my year sentence on a two-year sentence.

"[Prosecutor]: You weren't on escape status on January 2nd, 1984?

"[Fernandes]: Yes, I was.

"[Prosecutor]: You were on escape status on January 2nd, 1984?

"[Fernandes]: Yes, I was.

"[Prosecutor]: When did you escape from jail?

"[Fernandes]: November 6th, 1983.

"[Prosecutor]: And from what jail did you escape from Mr. Fernandes?

"[Fernandes]: New Bedford, Bristol County House of Corrections."

Fernandes argues that the state deliberately pursued a line of questioning on cross-examination that was clearly designed to circumvent the trial court's pretrial order. The state's actions, according to Fernandes, were tantamount to misconduct and did nothing more than inflame the minds of the jurors against Fernandes.

In *State v. Bennett*, 122 R.I. 276, 405 A.2d 1181 (1979), we recognized the use of the motion in limine as a procedural tool to prevent prejudicial evidence from reaching the jury. We noted that these motions could be made either before trial or at the conclusion of the prosecution's case and that they may be either absolute or preliminary in nature. *Id.* at 286, 405 A.2d at 1187. We also stated our belief that the better approach would be to require the trial justice to respond to such a motion so long as he/she had before him/her all of the relevant information upon which a decision might be based. *Id.*

■ We take the position in this case that the granting of a motion in limine need not be taken as a final determination of the admissibility of the evidence referred to in the motion. This is the approach adopted by the Indiana Supreme Court. *See Gilliam v. State*, 270 Ind. 71, 383 N.E.2d 297 (1978); *Lagenour v. State*, 268 Ind. 441, 376 N.E.2d 475 (1978).

The purpose of the motion in limine is to "prevent the proponent of potentially prejudicial matter from displaying it to the jury * * * in any manner until the trial court

has ruled upon its admissibility in the context of the trial itself." *Lagenour*, 268 Ind. at 450, 376 N.E.2d at 481. Consequently, "it is not in itself grounds for reversal that the trial court permitted the prosecutor to ask questions upon subjects embraced by the ruling on the pretrial motion." *Gilliam*, 270 Ind. at 76, 383 N.E.2d at 301. The only consideration on appeal is "whether the evidence and cross-examination was proper and admissible, and if not, whether the error was sufficiently prejudicial to warrant reversal." Id.

By adopting this approach, we do not suggest that a determination made upon a motion in limine should be ignored by the parties but only that the trial justice may, in appropriate circumstances, reconsider such a determination without committing error per se.

■ Without reaching the question of whether the circumstances were appropriate in this case, we note that defense counsel never objected to the prosecutor's question regarding whether Fernandes had completed his jail sentence. This court has previously stated that it will not entertain on review objections to evidence that were not raised at trial, *State v. Duggan*, 414 A.2d 788 (R.I.1980), similarly we shall not review objections to the prosecution's circumvention of a motion in limine where the defendant fails to make an objection during trial. Fernandes, by not having raised an objection when the challenged testimony was adduced, must be deemed to have waived his claim to its admissibility. *State v. Byrnes*, 433 A.2d 658 (R.I.1981). In addition, the evidence of guilt was so overwhelming that even were we to find the evidence of Fernandes's escape status improperly admitted, the prejudice to the defense was insignificant.

IV

The final topic for our review relates to the grand jury proceedings. Fernandes alleges that certain grand jury testimony of Arthur Denham was not recorded as required by Rule 6(e) of the Superior Court

Rules of Criminal Procedure.[3] Fernandes claims that the violation of Rule 6(e) denied him due process because Denham's testimony might have given him greater insight into the events in question and therefore might have enabled him to cross-examine the state's witnesses more thoroughly. The trial court as a result, according to Fernandes, should have dismissed the indictment.

■ This court has refused to apply a per-se rule of dismissal of an indictment for the violation of Rule 6(e). *State v. Heredia*, 493 A.2d 831 (R.I.1985). Dismissal as a sanction for an alleged irregularity of the grand jury is an extreme remedy that is unwarranted except in limited and very rare circumstances. *State v. Wilshire*, 509 A.2d 444, 448 (R.I.1986); *State v. Manocchio*, 497 A.2d 1, 12 (R.I.1985). When a subsequent petit jury convicts a defendant of the indictment charges, "then, any error in the grand jury proceeding connected with the charging decision [becomes] harmless beyond a reasonable doubt." *Wilshire*, 509 A.2d at 448 (quoting *United States v. Mechanik*, 475 U.S. 66, ——, 106 S.Ct. 938, 942, 89 L.Ed.2d 50, 56 (1986)).

In light of the jury's verdict of second-degree murder, we find the alleged failure to record a portion of Denham's testimony in violation of Rule 6(e) to be harmless beyond a reasonable doubt.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.

**3.** Rule 6(e) of the Superior Court Rules of Criminal Procedure provides in pertinent part: "Secrecy of Proceedings and Disclosure. A stenographic or other record shall be made of all proceedings before the grand jury other than its deliberations and voting."