STATE

v.

David MEDEIROS.

No. 86–536–C.A.

Supreme Court of Rhode Island.

Dec. 24, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Annie Goldberg, Asst. Atty. Gen., for plaintiff.

Kenneth Glenn Littman, Middletown, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from judgments of conviction for manslaughter in respect to Dennis Fon-

taine and assault and battery upon Robert Moretti entered in the Superior Court following a trial by jury. We affirm. The facts of the case, insofar as pertinent to this appeal, are as follows.

On January 2, 1984, Robert Moretti and Dennis Fontaine met David Medeiros (defendant), Brian Fernandes and Arthur Denham at LaBoheme, a bar located in Providence at the corner of Weybosset and Dorrance Streets. Their sojourn at LaBoheme was interrupted when defendant, Fernandes, and Denham became noisily engaged in an argument with the bartender and were asked to leave. Thereafter, the five men went to an establishment known as the Mira Bar, on Eddy Street in Providence.

In this latter establishment, defendant, Fernandes, and Denham became engaged in a fight on the dance floor. Fontaine and others attempted to break up the fight, but matters were taken in hand by two bouncers, who escorted defendant, Fernandes, and Denham out of the Mira Bar. Robert Moretti left the bar shortly thereafter and noted that Fontaine had left at the same time that defendant, Fernandes, and Denham had been ejected. As he rounded the corner onto Weybosset Street, Moretti saw defendant, Fernandes, and Denham jump on Fontaine and thereafter saw Fontaine stagger and fall.

At this point Denham ran over to Moretti and with a flying leap kicked him in the chest. Immediately thereafter, Denham was joined by defendant and Fernandes. The defendant grabbed Moretti, and Fernandes stabbed Moretti in the back. This account was corroborated in general by another witness, James McLaughlin, who saw the confrontation between Fontaine and three men. He also saw one of the men, Fernandes, take out a knife. The chief resident at the Rhode Island Hospital trauma unit testified that Fontaine was dead when she examined him and that he had died as a result of blood loss, secondary to stab wounds. The resident also examined Moretti and found that he had three superficial stab wounds in his body.

We have previously considered the case of *State v. Fernandes*, 526 A.2d 495 (R.I. 1987), in which we affirmed the conviction of Fernandes, who had stabbed the victim, Fontaine. In that case we set out the facts in considerable detail. Naturally, the facts in that case are very similar to the facts elicited in the course of defendant's trial.

The defendant raises three issues in support of his appeal. These three issues will be considered in the order in which they are presented in defendant's brief. Further facts will be supplied as may be necessary in order to determine the issues raised.

I

THE TRIAL JUSTICE'S RULING ON THE INTRODUCTION OF EVIDENCE OF PRIOR MISDEMEANOR CONVICTIONS

The defendant points out in support of this issue that two prior convictions that had been entered in the Second Division District Court on June 30, 1982, for simple assault and disorderly conduct, were used to impeach his credibility. He further asserts that during a hearing on a motion in limine to determine whether such convictions would be admissible, defense counsel represented to the court that defendant, if he were allowed to testify, would state that he was not represented by counsel, that he was not advised that he had a right to court-appointed counsel (indeed was advised that he had no right to court-appointed counsel), and that at the time he was indigent. Defense counsel further asserted that defendant never knowingly or intelligently waived his right to counsel at that time. The trial justice responded to this assertion by stating that since defendant was only fined in respect to these misdemeanor convictions, he was not entitled to court-appointed counsel. Consequently, the trial justice declined to conduct an evidentiary hearing or to allow defendant to testify regarding the circumstances surrounding the District Court pleas and indicated that it would be "unreasonable" to allow such a hearing.

The defendant argues that the admitting of these prior convictions of misdemeanor offenses for impeachment purposes violated the principles expressed by the Supreme Court of the United States in *Loper v. Beto*, 405 U.S. 473, 92 S. Ct. 1014, 31 L. Ed. 2d 374 (1972). In that case the Court, in a plurality opinion stated that the use of prior uncounseled felony-offense convictions that were void under the doctrine of *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), to impeach a defendant's credibility would violate his right to due process of law.

There seems little question that for Sixth Amendment purposes a misdemeanor conviction would not be considered invalid as long as it met the requirements contained in *Scott v. Illinois*, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979), and *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). These cases stand for the proposition that the Sixth Amendment to the Constitution of the United States mandates a right to counsel in misdemeanor cases only in the event that a defendant is sentenced to incarceration. To put it another way, a defendant who is not accorded the right to counsel may not, consistent with the Sixth Amendment, be sentenced to imprisonment, for no matter how limited a period.

As defendant properly points out, the Rhode Island Constitution, as construed in *State v. Moretti*, 521 A.2d 1003 (R.I. 1987), and *State v. Holliday*, 109 R.I. 93, 280 A.2d 333 (1971), gives a broader right to counsel than that required under the Sixth Amendment to the Federal Constitution. We have construed the Rhode Island Constitution to require the appointment of counsel for an indigent defendant if the potential sentence exceeds six months' imprisonment even in the event that the trial justice predetermines that no prison sentence will be imposed. We further held in *Moretti* and in

*State v. Palmigiano*, 112 R.I. 348, 309 A.2d 855 (1973), that in order to invoke the rule in *Loper v. Beto, supra*, it was necessary that the defendant make a positive representation that he was impermissibly denied counsel. We further suggested in *Moretti* that the defendant's bare assertion that he was impermissibly denied counsel may not meet the burden. In effect, we suggested that such a representation by the defendant requires corroboration:

"Among the options available to a defendant faced with such a circumstance would be to call a witness who was present at the hearing in which the District Court judge impermissibly denied the defendant counsel, or, the defendant might offer evidence of a timely but unsuccessful appeal of such an unlawful conviction." *Moretti*, 521 A.2d at 1010–11.

In the case at bar, defendant offered to testify himself but did not offer to present any corroborative evidence to show that he was impermissibly denied counsel.[1] However, it is also true that the trial justice declined to hold an evidentiary hearing because he was of the opinion that since only fines had been imposed, defendant was not entitled to raise the question of the validity of his misdemeanor convictions. In light of this determination by the trial justice, it will be necessary for us at this time to consider whether allowing impeachment by these two misdemeanor convictions resulted in prejudice to defendant or whether it constituted harmless error as suggested by Justice White, concurring in *Loper v. Beto, supra*, as that term has been defined in *Harrington v. California*, 395 U.S. 250, 89 S. Ct. 1726, 23 L. Ed. 2d 284 (1969), and *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *See State v. Palmigiano*, 112 R.I. at 356–57, 309 A.2d at 860.

---

1. At no time in our previous cases has this court specifically confronted the issue of whether a denial of counsel as required by the Rhode Island Constitution should necessarily trigger the imperative of *Loper v. Beto*, 405 U.S. 473, 92 S. Ct. 1014, 31 L. Ed. 2d 374 (1972), since the latter case is purely an application of the Sixth Amendment right to counsel and does not relate to the Rhode Island Constitution. In light of our determination of the impeachment issue in this case, it is not necessary for us to determine whether the doctrine of *Loper v. Beto* would be called into operation by denial of counsel under the broader right afforded by the Rhode Island Constitution.

In the case at bar, the prosecution sought to impeach defendant's credibility not only by the two Rhode Island misdemeanor convictions for which defendant had been fined $25 in respect to each charge but also on the basis of two Massachusetts convictions. The prosecution elicited evidence without objection that on October 14, 1983, defendant was convicted in Massachusetts of operating a motor vehicle so as to endanger and leaving the scene of an accident after damage to property. He was fined $125 on each charge. The trial justice gave a limiting instruction in regard to all four convictions that they would be admissible only for the purpose of impeaching defendant's credibility and should not be considered to indicate his guilt of the instant offense.

In view of the overwhelming evidence of defendant's participation in the attacks upon Dennis Fontaine and Robert Moretti and the limiting instruction given by the trial justice, we are of the opinion that the effect of these minor Rhode Island misdemeanor convictions upon the totality of proof offered by the state was so insignificant as to render them harmless beyond a reasonable doubt.

## II

### THE TRIAL JUSTICE'S RULING CONCERNING ARTHUR DENHAM'S ASSERTION OF HIS PRIVILEGE AGAINST SELF–INCRIMINATION

■ During the course of the trial, defendant indicated to the trial justice that he desired to call Arthur Denham, who had been charged as a codefendant in the case, as a witness in his behalf. Counsel for defendant informed the trial justice that he had been advised by Denham's counsel that Denham would invoke his privilege against self-incrimination in the event that he was called to testify. The defendant, by a motion in limine, requested that the trial justice rule on Denham's invocation of his privilege outside the presence of the jury. The trial justice responded that he could not rule in advance upon this question and that he would do so only if defendant raised his privilege in the course of testimo-

ny before the jury. In effect, the trial justice took the position that he would have to hear the questions propounded and then rule in respect to each question. It appears that in the event that the prospective witness asserted his privilege against self-incrimination, defendant would have sought to have the witness declared unavailable and would have attempted to introduce testimony given by Denham before the grand jury.

In any event, when the trial justice refused to rule on the question outside the presence of the jury, defendant did not call Denham as a witness, and therefore, no ruling on his privilege against self-incrimination was given during the trial.

The defendant cites *State v. Crews*, 208 N.J. Super. 224, 505 A.2d 198 (1986), for the proposition that in the event a defendant desires to call a witness who is expected to assert his privilege against self-incrimination, a hearing should be conducted out of the jury's presence. In the *Crews* case there was some indication that this technique should be followed in order to ensure the fact that neither side has the right "to benefit from an inference that might otherwise flow from [the] nonproduction [of the witness], and neither counsel in their summation nor the judge in his instructions should allude to the parties' failure to present him as a witness." *Id.* at 232, 505 A.2d at 203. *Crews*, in mandating such a procedure, would be inapposite in Rhode Island since in no circumstances may either the judge or the prosecutor comment upon a defendant's failure to call a witness. *State v. White*, 512 A.2d 1370, 1374 (R.I. 1986). It is true that in *State v. Pari*, 430 A.2d 429, 432 n.2 (R.I. 1981), we approved the holding of a hearing outside the presence of a jury by a trial justice in order to explore the scope of assertion of the privilege. However, we did not suggest that it would constitute reversible error in the event that a defendant desired to call a witness that a ruling concerning the invocation of the privilege would of necessity be made outside the presence of the jury. We decline so to hold at the present time.

In the case at bar, it is worthy of note that Denham had been charged as a codefendant only with conspiracy. At the time defendant suggested that he might call Denham, both defendant and Brian Fernandes had been granted a judgment of acquittal on the conspiracy counts. *See State v. Fernandes*, 526 A.2d at 497 n.2. The defendant's motion for judgment of acquittal on the conspiracy count had been granted four days prior to the time that defendant sought this ruling in limine. Consequently it is highly doubtful that Denham was any longer subject to liability as a coconspirator when both of the other coconspirators had been acquitted of the charge. *State v. Fontaine*, 113 R.I. 557, 323 A.2d 571 (1974); *State v. McElroy*, 71 R.I. 379, 46 A.2d 397 (1946).

Inasmuch as defendant chose not to call Arthur Denham, and further, in light of the fact that he never attempted to have the witness declared unavailable—and never attempted to present Denham's testimony before the grand jury, even assuming that he could have met the stringent requirements for introduction of prior recorded testimony (*see State v. Ouimette*, 110 R.I. 747, 754–55, 298 A.2d 124, 130 (1972))—there is no showing by defendant that he was in any way prejudiced by the denial of his motion in limine to pass upon Denham's possible invocation of his privilege against self-incrimination.

Consequently the trial justice did not commit reversible error in declining to respond to defendant's motion in limine on the abstract question of Denham's possible invocation of his privilege against selfincrimination.

### III

### THE TRIAL JUSTICE'S INSTRUCTIONS TO THE JURY

The defendant argues at length that the trial justice's instructions to the jury on the definition of aiding and abetting, as that definition related to the elements of manslaughter, were erroneous. He suggests that the trial justice has an obligation to instruct on those rules of law that must be applied to the issues at trial in clear and precise language, *State v. Cipriano*, 430 A.2d 1258, 1262 (R.I. 1981). This is a proper statement of the trial justice's obligation. In the case at bar, the trial justice called attention to the operative statute, G.L. 1956 (1981 Reenactment) § 11–1–3, which reads as follows:

"Every person who shall aid, assist, abet, counsel, hire, command, or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact, according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender is subject to by this title."

In presenting the issue to the jury as it related to manslaughter, the trial justice gave the following instruction:

"So in this case what this all boils down to is if you find that the State has proved beyond a reasonable doubt that the defendant had a conscious design and intent to kill Dennis Fontaine for more than a mere moment, and he aided or assisted or abetted Brian Fernandes in killing Fontaine, then your verdict should be guilty of murder in the first degree. Or if you find that the State has proved beyond a reasonable doubt that the defendant had a conscious design or intent to kill Dennis Fontaine for but a mere moment and he aided or assisted or abetted Fernandes in killing Fontaine, then your verdict should be guilty of second degree murder. *Or, if you find that the defendant did not have a conscious design or intent to kill Fontaine, but nevertheless he aided or assisted or abetted Fernandes in killing Fontaine, then your verdict should be guilty of manslaughter.* If you find that the State has failed to prove beyond a reasonable doubt all these elements that I have indicated; aiding or abetting or assisting, and the other elements of the crime, then of course your verdict should be not guilty." (Emphasis added.)

After the jury had deliberated for a brief period, a request was directed to the trial

justice for a further definition of the crime of manslaughter as it related to the case at bar. The trial justice responded to that request with a further definition:

"What I was talking about in this case was involuntary manslaughter.

"Involuntary manslaughter essentially is an unintentional killing, but is an unlawful killing, by commission of an act which violates the law. So, as I told you in this case, if *you find that the defendant didn't have an intention to kill Dennis Fontaine, but by his acts, his physical acts, he aided or abetted or assisted Fernandes in killing Fontaine, then he is guilty of manslaughter.*

"For example, if you find that the defendant was committing an assault and battery on Dennis Fontaine along with Fernandes and the defendant did not have an intention to kill Dennis Fontaine, *but by committing this assault and battery on Dennis Fontaine, he aided, abetted and assisted in the killing of Fontaine, then he is guilty of manslaughter.*

"In other words, *an unintentional killing, helping someone else to achieve that killing, although there is no intent to kill anyone, that is what manslaughter is.*

"Manslaughter, by definition, is a killing where there is no intention to kill, but it's done under unlawful circumstances." (Emphasis added.)

Essentially defendant argues that these instructions were inadequate because they failed to include an admonition that defendant must share the ultimate intent and design of the perpetrator of the crime. In making this contention, defendant misconceives our cases. We have recently defined involuntary manslaughter in *State v. Hockenhull*, 525 A.2d 926 (R.I. 1987), as an "unintentional homicide without malice aforethought, committed either in performance of an unlawful act not amounting to a felony or in the performance of a lawful act with criminal negligence." *Id.* at 929. Consequently it was not necessary that defendant have any intention of killing Fontaine as long as he aided and assisted in an unlawful act, namely, the physical attack

upon Fontaine, and in so doing assisted Fernandes in his unlawful attack, which resulted in Fontaine's death.

It is unnecessary that every act of the person who aids and abets should coincide with the act of the principal perpetrator. *See State v. Eddy*, 519 A.2d 1137 (R.I. 1987); *State v. Tarvis*, 465 A.2d 164 (R.I. 1983); *State v. Manning*, 447 A.2d 393 (R.I. 1982); *State v. Gazerro*, 420 A.2d 816 (R.I. 1980); *State v. Colvin*, 82 R.I. 212, 107 A.2d 324 (1954). In all the foregoing cases the person who was charged with aiding and abetting (though punishable as a principal) did not engage in a complete identity of action with the actual perpetrators of the crimes. For example, one who drives the car, as in *Colvin* or in *Tarvis*, may be equally responsible for a burglary or shooting as is the one who commits the physical acts that constitute the crime. One who drives the car while another strikes the windshield, as in *Manning*, may be sufficiently acting in concert to be punishable as a principal.

We agree, as pointed out in *State v. Gazerro, supra*, that more is required than mere presence. "[A]s the term 'aiding and abetting' implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient." 420 A.2d at 828 (quoting *Johnson v. United States*, 195 F.2d 673, 675 (8th Cir. 1952)). This does not mean that the person who aids and abets must foresee all the consequences of the unlawful acts in which he assists and participates. *See Tison v. Arizona*, —— U.S. ——, 107 S. Ct. 1676, 95 L. Ed. 2d 127, *reh. denied*, —— U.S. ——, 107 S. Ct. 3201, 96 L. Ed. 2d 688 (1987), in which the Supreme Court of the United States set a standard for application of the death penalty upon participants in an inherently dangerous felony even though they did not intend to bring about the deaths of the victims whose lives were taken by others engaged in a common enterprise. *Cf. Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140

(1982) (death penalty excessive where constructive aider and abettor with limited involvement in robbery did not intend or contemplate that life would be taken).

It is well settled in this jurisdiction that all who participate in a crime are severally responsible as principals, as though each had committed the offense alone. In order to punish each participant as a principal, it is unnecessary to prove a conspiracy. *State v. Brown,* 45 R.I. 9, 119 A. 324 (1923). The defendant in the case at bar was engaged in an unlawful physical attack upon Fontaine. It was not necessary that he intended Fontaine's death in order to be found guilty of involuntary manslaughter. Indeed, in accordance with the trial justice's instructions, had he intended the death of Fontaine, he would have been subject to conviction of murder in either the first or the second degree, depending upon the duration of that intent.

The defendant also argues that the trial justice should have instructed the jury on a lesser included offense of assault and battery in relation to the death of Fontaine. We have frequently stated that a trial justice need only instruct a jury regarding those rules of law that must be applied to the issues raised at the trial. *State v. Arpin,* 122 R.I. 643, 410 A.2d 1340 (1980). In this case, no such charge was appropriate in light of the undisputed fact that Fontaine had been killed by stab wounds. The defendant was not charged with assault and battery in respect to Fontaine. He was charged with aiding and abetting Fernandes in killing Fontaine. There was no basis for the lesser included offense of assault and battery. No judge is required to encourage a jury by his or her instructions to render an irrational verdict. A verdict of assault and battery in respect to the death of Fontaine, on the facts of this case, would have been irrational.

We have examined the entire charge as given by the trial justice in respect to the elements of aiding and abetting and manslaughter and are of the opinion that the trial justice gave correct instructions which were applicable to the evidence produced in the course of the trial and the legal issues that had been properly raised by such evidence.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers in the case may be remanded to the Superior Court.