STATE

v.

Anthony DeCIANTIS.

No. 84–588–C.A.

Supreme Court of Rhode Island.

Nov. 13, 1985.

Arlene M. Violet, Atty. Gen., Constance L. Messore, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Janice M. Weisfeld, Asst. Public Defender, for defendant.

OPINION

SHEA, Justice.

The defendant, Anthony DeCiantis, has appealed from his conviction of murder in the first degree in the Superior Court. After his motion for a new trial was denied, DeCiantis received a life sentence to be served consecutive to other sentences he was then serving. We affirm.

The state's evidence established a motive for the killing and linked defendant to the murder of Dennis Roche, the victim. The state's witness Louis Schiappa testified that on December 4, 1981, he observed two other men force the victim into a car driven by Anthony DeCiantis. The witness stated that he had seen DeCiantis drive the car on prior occasions, and he identified the first two letters on the license plate. These two letters were identical to those on the registration of a car owned by defendant's sister.

The next day Dennis Roche's body was discovered in a dump in Providence. According to Deputy Medical Examiner Arthur Burns, Roche had died from a gunshot wound to the "trunk." Roche had suffered a second gunshot wound, several stab wounds, and injuries to the face and head consistent with his having been run over by a car.

The state offered three additional witnesses, each of whom testified about separate occasions on which defendant had admitted to killing Roche. Louis Campagnone testified that approximately two months after Roche's murder, he and defendant were in a restaurant when DeCiantis admitted to having killed Roche, claiming that he did it because he believed Roche to have been responsible for the disappearance of DeCiantis' brother, Rocco.

Robert Livingston testified that during the summer of 1982, he and defendant had a conversation in which "Anthony DeCiantis told me that he and Ricky Silva had killed Dennis Roche * * *. He said that Ricky had shot him and he had stabbed him." Livingston also testified that Rocco DeCiantis's disappearance had motivated the killing.

The third witness, William Ferle, testified that on December 5, 1981, in a conversation at the Gallery Nightclub, Anthony DeCiantis told Ferle that he and Ricky Silva had murdered Roche by shooting him and driving over him with a car. Ferle testified that DeCiantis said Roche "kept annoying him and throwing it in his face about his brother being killed on Halloween night and that it might be his turn next." Cross examination revealed that Ferle had served time in federal prison for bank fraud and that he also had charges pending for murder, arson, robbery, and filing false papers. Although he denied that any firm promises had been made, Ferle did acknowledge hoping that state police protection would be provided for himself and his family and that he would not have to go to prison.

At the conclusion of the trial, the jury returned a verdict against defendant, finding him guilty of murder in the first degree.

The defendant contends that the trial justice erred in refusing to grant several motions to pass the case because of Ferle's references to organized-crime figures and activities. He asserts that neither the trial justice's act of striking the statements from the record nor his curative instructions to the jury were sufficient to dispel the prejudice engendered by that testimony. The defendant also asserts that the trial justice committed reversible error in refusing to give the jury a special bias instruction regarding a witness who stands to gain favorable treatment from the state in his own criminal cases through his testimony against the accused.

We turn first to defendant's allegation that Ferle's testimony deprived him of his right to a fair trial. At the commencement of Ferle's testimony, the prosecutor asked the witness if he knew of a relationship between the victim and one Anthony Parillo. Defense counsel objected, arguing at side bar that the testimony sought to be elicited about this relationship related to organized crime, was irrelevant to the state's theory that defendant had killed Roche to avenge his brother's disappearance, and was highly prejudicial. The state argued that the organized-crime relationship was probative to explain the disappearance of defendant's brother, Rocco. The trial justice agreed with defense counsel's reasoning and sustained the objection.

Shortly thereafter Ferle was asked why he had been in the Gallery Nightclub on the night of December 5, 1981, the scene of DeCiantis's alleged admission. He responded that he had been there to enforce "protection" that was being paid to "Bobo" Marrapese. A defense objection based on relevancy was sustained, and a motion to strike was granted. At side bar the prosecutor stated,

"I am not meaning to suggest that the murder of Dennis Roche was done as a result of instructions in some organized crime fashion, but that the inter-relationships of the parties caused the defendant to believe that his brother was in fact murdered by these people and the cause of his murder which then caused him to act."

The trial justice responded:

"I don't think this is necessary and I think its highly peripheral to the charge

against this defendant to go into this and everything else that you are trying to go into with respect to the relationship between all these parties. It could prove to be prejudicial to the Defendant and again I am going to go along with the objection of the defense counsel."

Despite the prior objections, the prosecutor then asked Ferle about the relationship between the victim and one Vito DeLuca. Again a defense objection was sustained. Next, Ferle testified about a conversation in which defendant expressed concern over Vito DeLuca's reaction to the killing of Roche. At this point, defense counsel moved to pass the case. The motion was denied.

On cross-examination, defense counsel was able to show that Ferle's police statement made no reference to certain conversations about which he testified at trial. When defense counsel inquired why an account of those conversations was not included in the statement, Ferle responded,

"Well, you wouldn't let me say what the conversation was about. They wanted to kill Porky [the defendant, Anthony DeCiantis] too because if Bobo would straighten out with Vito, Vito wanted to kill Porky because he was afraid Porky would kill him because Vito killed Porky's brother Rocco."

Defense counsel's motion to pass was denied. The justice was of the opinion that his instruction to the jury to ignore Ferle's outbursts and nonresponsive answers offset any prejudice. Another motion to pass was made following Ferle's statement that Vito DeLuca wanted to kill DeCiantis because he had killed Roche without DeLuca's approval. The trial justice again denied the motion.

■ This court has not yet considered the precise issue raised by DeCiantis, that is, whether the intentional or inadvertent mention of organized crime in a trial that is unrelated to alleged organized-crime activities is so prejudicial that the case must be passed. We have considered the cases cited by defendant in support of his argument

that Ferle's testimony was so inherently prejudicial that even the most prudent curative instruction could not rectify the harm. We agree that a conviction cannot be allowed to stand in cases in which the prosecutor deliberately introduces the "specter" of organized crime into the trial without a proper purpose or foundation in the evidence. *United States v. Love*, 534 F.2d 87 (6th Cir.1976) (prosecutor asked defendant, employee of debt-collection company, whether company was part of another organization of "ill like character like mafia or anything like that"); *United States v. Perry*, 512 F.2d 805 (6th Cir.1975) (prosecutor asked if defendant was a member of the Dixie Mafia). *See United States v. Schwartz*, 548 F.2d 427, 431–32 (2d Cir. 1977). We do not believe, however, that it is appropriate to adopt a per se rule requiring that any mention or reference to organized crime must result in reversal of the conviction.

This court continues to adhere to the established principle that "[t]he determination of whether a questioned statement is harmless or improperly prejudicial is, in the first instance, addressed to the sound discretion of the trial justice." *State v. Sfameni*, 115 R.I. 18, 22, 339 A.2d 742, 744 (1975). The trial justice is better able to assess the degree of prejudice created and the effectiveness of prompt curative instructions aimed at purging the potentially prejudicial statement from the jurors' minds. *State v. Hoyle*, 122 R.I. 45, 404 A.2d 69 (1979); *State v. Freitas*, 121 R.I. 412, 399 A.2d 1217 (1979). The attendant facts and circumstances of each case must be carefully evaluated; whether the trial justice exercised proper discretion is an assessment that does not lend itself to any fixed formula. *State v. Massey*, 119 R.I. 666, 382 A.2d 801 (1978); *State v. Sfameni*, 115 R.I. 18, 339 A.2d 742 (1975). This court will disturb a ruling by the trial court "only if we are convinced that the cautionary instructions were untimely or ineffective, or if the improper material had been so indelibly etched in the jurors' minds that,

despite timely action, the trial justice did not disabuse the jurors' minds of the prejudicial effect." *State v. Marrapese*, 116 R.I. 1, 7, 351 A.2d 95, 98 (1976).

■ The defendant argues that both the prosecutor and witness Ferle intentionally injected improper, prejudicial, and immaterial evidence into the trial. Although we do not approve of the prosecutor's stubborn and repeated attempts to pursue a line of questioning ruled inadmissible by the trial justice, we do not believe his actions rose to the level of prosecutorial misconduct that requires the sanction of reversal. *Cf. State v. Verlaque*, — R.I. —, 465 A.2d 207 (1983); *State v. Coelho*, — R.I. —, 454 A.2d 241 (1982) (prosecutor's deliberate failure to comply with Super R.Crim.P. 16 discovery requirements resulted in reversal of convictions). Significantly, the most explicit statements regarding "gang" relationships dropped from the lips of witness Ferle; they were not attributable to the prosecutor. Moreover, those statements were elicited, however unintentionally, by the defense on cross-examination. Some of the statements complained of were truly nonresponsive, yet it is clear from the record that others were in answer to open-ended questions. Like many witnesses in trials, Ferle had an arguable interest in the outcome of the case; he was not, however, a member of the prosecution team. The prosecutor told the court that, prior to trial, he had explained to Ferle the necessity of abiding by the justice's rulings, and a recess was taken so that the prosecutor could instruct and caution Ferle again. At all relevant times the trial justice granted motions to strike and admonished the jury to disregard the improper statements. We do not believe that the jury was unable to comply with those directions.

The court has carefully read the record and evaluated the evidence as a whole. In view of the other evidence presented, including a witness who placed the victim in defendant's car on the night of the murder, as well as two other witnesses who testified to separate admissions by DeCiantis, we conclude that the trial justice correctly denied defendant's motion to pass the case.

■ We turn now to defendant's second allegation of error. At the close of the evidence, defense counsel filed written requests for jury instructions. The defendant's requests No. 17 and 18 dealing with bias of a witness were not given to the jury. The defendant objected to the "failure to instruct with respect to requests 17, 18, 25, 26, and 29."

The defendant contends that the court erred in refusing to charge the jury with the instructions on bias offered by his counsel. The state, however, argues that defendant's failure to specify the precise grounds for his objections violated the requirements of Rule 30 of the Superior Court Rules of Criminal Procedure which states that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.*" (Emphasis added.)

The court has addressed this issue on numerous occasions in recent years. This court noted that

"[n]o trial justice may be expected to be endowed with that quantum of total recall which would enable him or her at the conclusion of the charge to be certain that all necessary points have been covered accurately and completely. *At this point it is incumbent upon trial counsel to point out to the judge specifically and clearly those areas in which corrections or further instructions may be needed.*" (Emphasis added.) *State v. Williams*, — R.I. —, —, 432 A.2d 667, 670 (1981).

In *State v. Farlett*, — R.I. —, 490 A.2d 52 (1985), the defendant requested a series of jury instructions dealing with methods to evaluate the credibility of the complainant. Although defense counsel made a timely objection to the absence of his de-

sired charge, the precise grounds for the objection were not given. This court did not reach the merits of the argument because of the defendant's noncompliance with Rule 30. We have observed that the rule

"expressly bars a party from assigning as error any portion of a charge or omission therefrom unless he specifically directs the trial justice's attention to the matter to which he objects and gives the ground for his objection." *State v. Rodriquez,* —— R.I. ——, ——, 478 A.2d 171, 173 (1984) (quoting *State v. Dionne,* —— R.I. ——, ——, 442 A.2d 876, 885 (1982) ).

The Rule 30 requirement was again addressed by this court last term. In *State v. Manocchio,* —— R.I. ——, 497 A.2d 1 (1985), defense counsel failed to state the precise grounds for the objection, and this court declined to reach the merits of the issue. Objecting by number to the jury charge is inadequate to preserve the issue for appellate review.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

BEVILACQUA, C.J., did not participate.