DECISION
Before this Court is the Amended Application for Post-Conviction Relief of Anthony DeCiantis ("Petitioner") pursuant to G.L. 1956 § 10-9-1.1. On December 13, 2005, and January 23, 2006, this Court heard testimony from various witnesses, including Petitioner. Having considered the record, the memoranda filed by the parties, and the oral arguments, the Court holds that the claims of the Petitioner are factually and legally without merit, and therefore denies and dismisses Petitioner's complaint for post-conviction relief.
 I. FACTS AND TRAVEL
On June 7, 1984, a Jury of the Rhode Island Superior Court returned a verdict of guilty against Petitioner for the murder of Dennis Roche. On October 17, 1984, the Superior Court sentenced Petitioner to a life sentence to run consecutive to the sentence that Petitioner was serving for two counts of murder committed in Johnston on November 7, 1982. The underlying facts of that case are set forth in State v. DeCiantis,501 A.2d 365 (R.I. 1985), where the Rhode Island Supreme Court upheld the conviction and sentence of the Superior Court.
On October 25, 1999, Petitioner filed an Amended Verified Application for PostConviction Relief, which the State moved to dismiss this application. On February 20, 2000, the Superior Court granted the State's Motion to Dismiss on those counts concerning allegations *Page 2 
regarding ineffective assistance of counsel and ineffective assistance of post-conviction counsel, but denied the State's Motion to Dismiss the complaint as it related to the four counts which alleged "newly discovered evidence of prosecutorial misconduct." Therefore, the four issues alleged by the Petitioner which remain for this Court's consideration are:
 (1) that the State intentionally withheld the specifically requested juvenile records of witness Luigi Schiappa;
 (2) that the State deliberately and intentionally failed to disclose rewards and inducements paid to witness William Ferle, who also committed perjury when questioned about these rewards and inducements;
 (3) that the State intentionally withheld exculpatory evidence offered by Janice Manfredi; and,
 (4) that the State threatened to charge an alibi witnesses with perjury.[1]
After due consideration, for the reasons set forth herein, this Court finds that each of these claims are legally and factually without merit, and therefore, denies Plaintiff's application for post-conviction relief. II. STANDARD OF REVIEW
For claims under § 10-9-1.1, "the trial justice applies the [denovo] standard used for awarding a new trial . . ." to determine if the alleged suppression of evidence would be "of such *Page 3 
significance as to have denied the defendant's right to a fair trial."Powers, 734 A.2d at 517. "Despite this de novo standard . . . `a reviewing court should take care . . . to review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts. . . .'" Id. at 514 (emphasis added) (quotingOrnelas v. United States, 517 U.S. 690, 699 (1996); citing Broccoli v.Moran, 698 A.2d 720, 725 (R.I. 1997); Mastracchio, 698 A.2d at 710; andLaChappelle v. State, 686 A.2d 924, 926 (R.I. 1996)).
 III. ANALYSIS
"Post-conviction relief is available to any person in this state, pursuant to G.L. 1956 chapter 9.1 of title 10, who, after having been convicted of a crime, claims, `inter alia, that the conviction violated his constitutional rights or that newly discovered facts require vacation of the conviction in the interest of justice.'" Powers v.State, 734 A.2d 508, 513-514 (R.I. 1999) (quoting Mastracchio v.Moran, 698 A.2d 706, 710 (R.I. 1997)).
"When confronted with a new-trial motion based on newly discovered evidence, the trial justice undertakes a two-pronged analysis."Kholi v. Wall, No. 2005-3-Appeal, slip op. at 5-6 (R.I., filed Dec. 14, 2006) (citing State v. Firth, 708 A.2d 526, 532 (R.I. 1998) (citingState v. Gomes, 690 A.2d 310, 321 (R.I. 1997))).
 "`The first prong is a four-part inquiry that requires that the evidence be (1) newly discovered since trial, (2) not discoverable prior to trial with the exercise of due diligence, (3) not merely cumulative or impeaching but rather material to the issue upon which it is admissible, (4) of the type which would probably change the verdict at trial. . . . Once this first prong is satisfied, the second prong calls for the hearing justice to determine if the evidence presented is `credible enough to warrant a new trial.'" Id. (citing Firth, 708 A.2d at 532 (quoting Gomes, 690 A.2d at 321)).
Although the defendant is required under Firth to use due diligence in discovering evidence prior to trial, a criminal prosecutor also has a well-recognized "affirmative duty to *Page 4 
disclose evidence favorable to a defendant." Kyles v. Whitley,514 U.S. 419, 432 (U.S. 1995) (citing Brady v. Maryland, 373 U.S. 83, 86 (1963)). The State's failure to perform this duty — irrespective of the good faith of the prosecutor or the defendant's failure to specifically request the information — is a violation of the defendant's constitutional rights and may be grounds for post-conviction relief under § 10-9-1.1. Id. at 432-433 (citing United States v. Agurs,427 U.S. 97 (1976); Moore v. Illinois, 408 U.S. 786, 794-795 (1972)). Nevertheless, the State's duty to distribute information to the defendant exists "only when suppression of the evidence would be `of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Id. (emphasis added) (citing Brady, 373 U.S. at 108);see also United States v. Bagley, 473 U.S. 667, 675 (1985) (noting that "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial"). For example, upon a discovery request, Rule 16 of the Rhode Island Rules of Evidence obligates the State to produce "only prior recorded testimony of a witness, a summary of the witness's expected trial testimony, and any records of prior convictions." State v. Briggs, 886 A.2d 735, 754 (R.I. 2005) (emphasis added) (quoting State v. Chalk, 816 A.2d 413, 418 (R.I. 2002)).
Importantly, however, when the prosecutor's failure to disclose evidence is deliberate, the Court "must not concern itself with the degree of harm caused to the petitioner by the prosecution's misconduct; rather it should simply grant the petitioner a new trial." State v.Wyche, 518 A.2d 907, 910 (R. I. 1986) (emphasis added). "The prosecution acts deliberately when it makes `a considered decision to suppress . . . for the purpose of obstructing' or where it fails `to disclose evidence whose high value to the defense could not have escaped . . . [the State's] attention.'" Id. (quoting United States v. Keogh, 391 F.2d 138,146-47 (2d Cir. 1968)) *Page 5 
(noting that under this "deliberate" standard suppressed "information still must be material"). Thus, in either instance — a deliberate suppression or a mere failure to disclose — the Court must first determine whether or not the "missing" evidence was material.
Evidence is material "`if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles, 514 U.S. at 433-434 (emphasis added) (quoting Bagley, 473 U.S. at 682, 685). "A `reasonable probability' of a different result is . . . shown when the government's evidentiary suppression `undermines confidence in the outcome of the trial.'"Id. at 434 (citing Bagley, 473 U.S. at 678). A reasonable probability "does not require the defendant . . . demonstrate that the evidence . . . probably would have resulted in acquittal." Id. at 434 (emphasis added) (citing Bagley, 473 U.S. at 678). In looking to materiality, "[a] trial justice must `not determine whether there was sufficient evidence to convict absent the discounted evidence but must instead determine whether the previously undisclosed [or newly discovered] favorable evidence puts the case in such a different light as to undermine confidence in the verdict.'" Bleau v. Wall, 808 A.2d 637, 643 (R.I. 2002) (quoting Broccoli v. Moran, 698 A.2d 720, 726 (R.I. 1997)).
 IV. DISCUSSION
The facts adduced at trial in State v. DeCiantis, 501 A.2d 365, as stated by the Rhode Island Supreme Court, were as follows:
 "The state's evidence established a motive for the killing and linked defendant to the murder of Dennis Roche, the victim. The state's witness Louis Schiappa testified that on December 4, 1981, he observed two other men force the victim into a car driven by Anthony DeCiantis. The witness stated that he had seen DeCiantis drive the car on prior occasions, and he identified the first two letters on the license plate. These two letters were identical to those on the registration of a car owned by defendant's sister.
 "The next day Dennis Roche's body was discovered in a dump in Providence. According to Deputy Medical Examiner Arthur Burns, Roche had *Page 6 
died from a gunshot wound to the `trunk.' Roche had suffered a second gunshot wound, several stab wounds, and injuries to the face and head consistent with his having been run over by a car.
 "The state offered three additional witnesses, each of whom testified about separate occasions on which defendant had admitted to killing Roche. Louis Campagnone testified that approximately two months after Roche's murder, he and defendant were in a restaurant when DeCiantis admitted to having killed Roche, claiming that he did it because he believed Roche to have been responsible for the disappearance of DeCiantis' brother, Rocco.
 "Robert Livingston testified that during the summer of 1982, he and defendant had a conversation in which `Anthony DeCiantis told me that he and Ricky Silva had killed Dennis Roche. . . . He said that Ricky had shot him and he had stabbed him.' Livingston also testified that Rocco DeCiantis's [sic.] disappearance had motivated the killing.
 "The third witness, William Ferle, testified that on December 5, 1981, in a conversation at the Gallery Nightclub, Anthony DeCiantis told Ferle that he and Ricky Silva had murdered Roche by shooting him and driving over him with a car. Ferle testified that DeCiantis said Roche `kept annoying him and throwing it in his face about his brother being killed on Halloween night and that it might be his turn next.' Cross examination revealed that Ferle had served time in federal prison for bank fraud and that he also had charges pending for murder, arson, robbery, and filing false papers. Although he denied that any firm promises had been made, Ferle did acknowledge hoping that state police protection would be provided for himself and his family and that he would not have to go to prison."
The Petitioner seeks post-conviction relief for alleged "newly discovered evidence of prosecutorial misconduct" regarding the juvenile records of witness Louis Schiappa, certain promises and inducements made to witness William Ferle, potentially exculpatory evidence offered by Janice Manfredi, and an alleged threat to charge an unnamed alibi witness with perjury. The Court will address each of these claims in turn.
(1) The Juvenile Records of Louis Schiappa
Pursuant to Rule 16, the Petitioner requested "any criminal convictions of any witness for the State." The State responded without attaching any convictions regarding the witness Louis Schiappa, who had a juvenile record but no criminal convictions or Bureau of Criminal Identification ("BCI") records. Petitioner, now claims that the State intentionally withheld the *Page 7 
requested criminal records of witness Schiappa by failing to disclose evidence that the witness had a juvenile record.
In making this claim, Petitioner relies on State v. Sorel,658 A.2d 505 (R.I. 1995), for the proposition that "the [Sixth Amendment] right of confrontation is paramount to the state's policy of protecting the anonymity of a juvenile offender," and Davis v. Alaska, 415 U.S. 308,320 (1974), which held that such a right is violated "when a defendant is prohibited from using a witness' juvenile record during cross-examination . . . [in order to show] bias of an adversewitness." (Emphasis added); Cf. R.I. Rules of Evidence 609(d) ("Evidence of juvenile adjudications is generally not admissible. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.").
Recently, in State v. Maniatis, our Supreme Court limited the scope ofDavis and Sorel to cases where the witness' juvenile record would be used during cross-examination "as a means of exposing motive or bias in how that witness answered police questioning and what he testified to at trial." 657 A.2d 149, 155 (R.I. 1995) (citing Davis,415 U.S. at 313-314). Importantly, the Maniatis holding further limitedDavis and Sorel to those instances where the witness with the undisclosed juvenile record was "crucial." Id. ("Davis involved acrucial witness . . . [but the witness at issue in Maniatis] was not a crucial witness for the prosecution."); Cf. Sorel, 658 A.2d 505 (the witness at issue in this case was the complaining witness and a victim on a charge of child molestation.).
In the instant case, the Petitioner would not have been able to use Schiappa's juvenile adjudication in order to establish a motive or bias for testifying. There exists nothing in the *Page 8 
record to suggest that Schiappa was a suspect in the death of Dennis Roche, nor that he had any reason to believe that he might be. The Court has had an opportunity to review the witness' juvenile record incamera and finds that the offense type and date are so removed from the Petitioner's criminal trial as to be irrelevant for impeachment purposes and therefore immaterial. Finally, although Schiappa was important to the State's case, he was not a "crucial witness" — whatever that term may mean — as the State offered at trial evidence of the Petitioner's confession of the crime. As the evidence the Petitioner seeks to admit is immaterial under Maniatis — and would likely be otherwise inadmissible under Rule 609(d) — this Court finds that the State's failure to provide witness Schiappa's juvenile record to the Petitioner does not put the case in such a different light as to undermine confidence in the verdict.
(2) Promises and Inducements Made to Witness William Ferle
As the Supreme Court noted in affirming the Petitioner's conviction, "[a]lthough [witness William Ferle] denied that any firm promises had been made, Ferle did acknowledge hoping that state police protection would be provided for himself and his family and that he would not have to go to prison." DeCiantis, 501 A.2d 365. Petitioner now alleges, however, that the State withheld information regarding thespecific promises, rewards and inducements made to witness William Ferle — including direct payments and other expenditures — in order to procure his testimony against the Petitioner, and that these suppressions undermine the confidence in his verdict.
The record at trial clearly reveals that the State disclosed that Ferle was in the custody of the Rhode Island State Police, and that while he hoped he and his family would remain in custody, and that, if he were to serve any jail time, that he would do so in the custody of the Rhode Island State Police, at the time he had been given no promises for his pending cases. In addition, Ferle *Page 9 
was subject to thorough cross-examination regarding these rewards and inducements, and counsel for the Petitioner explored at length the basis of financial support of the witness and his family while in the custody of the Rhode Island State Police. (See Trial Transcript, page 246.) Thus, this Court holds that there is no reasonable probability of a different result had the Petitioner been provided with the specific expenditures made on Ferle at the time of trial.
The Petitioner further claims that witness Ferle perjured himself on the stand by denying that any specific deals had been made between himself and the State regarding his testimony in this and other criminal cases. In making this claim, Petitioner refers to a Memorandum of Agreement between Ferle and the State. However, this document was filed on April 30, 1985, more than ten months after the Petitioner's trial, and therefore it cannot be used to show that the witness committed perjury.
Finally, the Petitioner argues that the State intentionally withheld an uncharged act — the murder of Ronald McElroy — admitted to by Ferle prior to trial. While our Supreme Court has established standards for varied allegations for prosecutorial misconduct, there exists no authority to support the Petitioner's proposition that the State is obligated to inform opposing counsel of uncharged admissions of a witness. See Briggs, 886 A.2d at 754 (Rule 16 only obligates the disclosure of "records of prior convictions," not uncharged admissions.). Moreover, as the Supreme Court noted, "[c]ross examination [at trial] revealed that Ferle had served time in federal prison for bank fraud and that he also had charges pending for murder, arson, robbery, and filing false papers." DeCiantis, 501 A.2d 365. The Petitioner's argument that the State's failure to disclose an additional admission is "tantamount to . . . accepting that if one were to paint one additional black stripe on a zebra, it would serve to disguise the zebra and *Page 10 
conceal it's identity as a zebra." State v. Evans, 725 A.2d 283 (R.I. 1999) (citing Mastracchio, 698 A.2d at 714).
The Jury in the Petitioner's trial already knew of Ferle's federal prison sentence for bank fraud and of his pending charges for arson, fraud, filing false papers and murder. Therefore, the Court holds that the addition of an immaterial uncharged admission creates no reasonable probability of a different result. As such, the Petitioner's complaints regarding witness William Ferle are denied.
(3) Exculpatory Evidence of Janice Manfredi
In State v. Parillo, 480 A.2d 1349 (R.I. 1984), Janice Manfredi testified that she suspected that the victim in the present case, Roche, had been killed by the defendant in that case, Parillo, and that she feared she "was next" because she and Roche were both accomplices to one of the crimes Parillo committed. The Petitioner claims that the State intentionally withheld this allegedly exculpatory evidence regarding the statements of Janice Manfredi, and further claims that the suppression of this evidence undermines the confidence of the Petitioner's verdict.
As an initial matter, this Court notes that Manfredi testified in theParillo matter nearly two years prior to the Petitioner's trial, and — as part of the public record — this evidence was readily available to the Petitioner, and not subject to the State's suppression. Moreover and more importantly, even if the Court considered this evidence "newly discovered" it nevertheless clearly lacks materiality. Manfredi's fear, unsupported by any evidence, possesses little, if any, probative value, especially in light of its prejudicial value, and it therefore would have failed judicial scrutiny under Rhode Island Rule of Evidence 403. Therefore, the State's failure to "disclose" this evidence in no way created a reasonable probability of a different result or undermined the Court's confidence in the Petitioner's verdict. *Page 11 
 (4) Threatening of Defendant's Unnamed Alibi Witness
Although not addressed in his most recent memorandum, the Petitioner alleges in his complaint that a now-deceased relative told him that the State threatened her with perjury charges were she to testify at trial. Again, as an initial matter, this evidence was clearly discoverable by the Petitioner prior to trial. Furthermore, as a matter of prosecutorial misconduct, it is neither illegal nor uncommon for a criminal prosecutor to advise a witness that false testimony could lead to the filing of criminal charges. Finally, testimonial evidence of what the Petitioner's witness told him regarding a conversation with a third party constitutes hearsay without exception under the Rhode Island Rules of Evidence. Therefore, the Court finds that this claim fails for lack of materiality, and does not undermine the Court's confidence in the Petitioner's verdict.
 V. CONCLUSION
For the foregoing reasons, this Court holds that none of the previously undisclosed or newly discovered evidence raised at issue in the instant petition puts the Petitioner's criminal case in such a different light as to undermine this Court's confidence in the verdict reached by the Jury. Therefore, the Petition is denied, and Counsel shall submit the appropriate Order for Entry.
[1] The Petitioner also raised, as an additional issue at hearing and in its supporting memorandum, the fact that the State's prosecutor in this case, David Leach, was involved in other criminal cases where convictions were reversed based on "prosecutorial misconduct" in the form of deliberate discovery withholding. See State v. Diaz,456 A.2d 256 (R.I. 1983); State v. Verlaque, 465 A.2d 207 (R.I. 1983); State v.Heredia, 493 A.2d 831 (R.I. 1985); State v. Adams, 481 A.2d 718 (R.I. 1984). In response to this allegation, the Court first notes that the law generally distrusts such propensity evidence, particularly where it is used to prejudicially infer that "because a man has committed other [similar acts] he is more likely to have committed the current [act]."State v. Mohapatra, 880 A.2d 802, 811 n. 10 (R.I. 2005) (citingPeople v. Lehman, 5 Ill. 2d 337, 125 N.E.2d 506 (Ill. 1955) (quoting 1 John H. Wigmore, Evidence § 194 (3d ed. 1940))). Moreover and more importantly, the Court heard testimony regarding Prosecutor Leach's actions, and found this compelling testimony supported the State's position that no prosecutorial misconduct was committed in thiscase.