**STATE**

v.

**Susan Lee CASSEY, Charles A. Gilbert.**

**No. 86–381–C.A.**

Supreme Court of Rhode Island.

June 9, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Robert E. Craven, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

Paula Rosin, Barbara Hurst, Asst. Public Defenders, Thomas A. Grasso, Pawtucket, for defendants.

## OPINION

**WEISBERGER, Justice.**

This case comes before us on appeal from judgments of conviction in regard to each defendant of three separate counts of first-degree sexual assault upon Susan Lee Cassey's child (Ted Alan Cassey) over a period when he was four and five years of age. Each defendant was found guilty of three separate acts of sexual molestation, upon the child. The trial justice imposed a sentence of thirty years' imprisonment upon Susan Lee Cassey (Cassey) on the first count and a consecutive thirty-year suspended sentence with thirty years' probation on the second count and a consecutive thirty-year term of probation on the third count (the first three counts of the indictment related solely to Cassey). Charles A. Gilbert (Gilbert) was sentenced to a term of life imprisonment on the fourth count of the indictment and to consecutive thirty-year terms of probation on counts 5 and 6 (counts 4 through 6 applied to Gilbert only). We affirm. The facts of the case may be stated as follows.

During the time relevant to this joint indictment Cassey and Gilbert were living together. They also were related to each other as first cousins. The evidence disclosed that Cassey engaged in three separate acts of sexual penetration with her son. The facts of her relationship with her son will be disclosed in all of their revolting detail in other portions of this opinion. Gilbert was charged with three separate acts of penetration that did not involve Cassey. In one of these acts Gilbert penetrated the anal cavity of the child and spanked him when he cried. In a second act Gilbert penetrated the oral cavity of the child with his penis. In a third act Gilbert took the penis of the child into his (Gilbert's) oral cavity. The indictment was brought jointly against the two defendants pursuant to Rule 8(b) of the Superior Court Rules of Criminal Procedure, but the evidence finally adduced seemed to indicate that the acts committed by Cassey and Gilbert were not jointly committed but the separate acts of each defendant.

Each of the defendants raises a number of issues that will be dealt with, not in the order in which they are raised in the briefs of the two defendants, but in order of their

significance to this opinion. Further facts will be supplied as necessary to the determination of the issues raised.

## I

### THE DENIAL OF THE MOTION TO SEVER

 Both defendants argue that the denial of their motions to sever and to grant each defendant a separate trial was erroneous and prejudicial. They assert that since the evidence disclosed that each defendant committed separate acts of sexual molestation, each was prejudiced by the spill-over effect of evidence adduced against the other.

We shall begin our inquiry by determining whether this indictment was appropriately brought against both defendants. Rule 8(b) provides as follows:

"Joinder of Defendants. Two (2) or more defendants may be charged in the same indictment, information, or complaint if they are alleged to have participated in the same act or transaction *or in the same series of acts or transactions* constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." (Emphasis added.)

At the time that this case was presented to the grand jury, the prosecution had received a considerable amount of evidence from the victim (who by this time was six years of age) that indicated that Cassey and Gilbert were each aware of the other's activities and had engaged in viewing through a peephole acts that they forced Ted to commit. It is undisputed that both defendants resided in the same dwelling and shared a single bedroom and that this bedroom was sometimes the scene of the acts of molestation committed upon the child.

As part of the testimony to the grand jury, a detective of the Central Falls police department recounted a statement given to him by the child which alleged that Gilbert (whom Ted referred to as his father) and his mother "used to lock me under the table and hit me with rope." In this same statement the child set forth an instance of being sodomized by Gilbert and being forced to lick his mother's vagina, "butt," and breasts. He further described his mother's requiring him to put his penis in her mouth as well as to place his penis upon and into her vagina.

He also stated that Gilbert placed the child's penis in his mouth and placed Gilbert's penis in the child's mouth. The statement further alleged that the mother and the "father" together had required the child to place the penis of his brother Marcus in his mouth and also to place the child's penis in Marcus's mouth. The child also alleged that the mother and the "father" watched this sexual play through a hole in the wall. It seems abundantly clear from the evidence presented to the grand jury that there was ample probable cause to justify the grand jury in finding that these two defendants had participated "in the same series of acts or transactions constituting an offense or offenses." Consequently the returning of a joint indictment was justified by plain language of Rule 8(b). During the course of the trial, the defendants moved for separate trials, alleging that each was prejudiced by evidence of acts committed by the other.

We have repeatedly stated that severance is not a matter of right but rather is an issue directed to the sound discretion of the trial justice. *State v. Ashness,* 461 A.2d 659, 668 (R.I.1983); *State v. Gibbons,* 418 A.2d 830, 834–35 (R.I.1980); *State v. Patriarca,* 112 R.I. 14, 28, 308 A.2d 300, 310 (1973). We have also stated that the trial justice's denial of a motion to sever will not be reversed on review unless there has been a clear abuse of discretion. *State v. Ashness,* 461 A.2d at 669. The defendant must affirmatively show that in fact he has suffered prejudice as a result of the joint trial to the extent that it has impinged upon his right to a fair trial. *Id.; State v. Gibbons,* 418 A.2d at 835; *State v. Patriarca,* 112 R.I. at 28, 308 A.2d at 310.

Federal courts have followed a similar rule in respect to severance under Rule 14

(which in substantially identical terms in both the federal and Rhode Island rules provides for severance to avoid prejudice). The federal rule has been stated as follows in *United States v. Zielie*, 734 F.2d 1447, 1464 (11th Cir.1984):

"In deciding a Rule 14 motion for severance the trial court must balance the right of a defendant to a fair trial against the public's interest in efficient and economic administration of justice. * * * Severance will be granted only if a defendant can demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of his defense. * * * Appellate courts are reluctant to second guess a trial court's refusal to grant a severance. * * * Therefore, our review is limited to determining if there was an abuse of discretion.

"In order to demonstrate an abuse of discretion, 'the defendant must establish that the joint trial subjected him not just to some prejudice, but to compelling prejudice against which the district court could not afford protection.' * * * A defendant does not suffer compelling prejudice simply because much of the evidence at trial is applicable only to his codefendants."

Federal courts have also stated that the fact that evidence against a codefendant may have been proportionately greater than the evidence against the complaining defendant is not itself grounds for a severance. *United States v. Peters*, 791 F.2d 1270, 1302 (7th Cir.1986); *United States. v. Hendrix*, 752 F.2d 1226, 1232 (7th Cir.) *cert. denied, sub. nom.*, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985).

In the case at bar the trial justice in the exercise of his discretion had to consider more than the usual balancing of the right of a defendant to a fair trial against the public's interest in efficient and economic administration of justice. The trial justice here was further required to consider the horrendous burden placed upon a complaining witness of tender years that would be imposed in the event he was required to testify on two separate occasions concerning the outrageous and revolting circum-

stances involving these defendants. The constitution of this state as recently amended provides in article I, section 23, "[a] victim of crime shall, as a matter of right, be treated by agents of the state with dignity, respect and sensitivity during all phases of the criminal justice process." Certainly in order to balance the right of this child witness to have his ordeal limited to one trial in respect to these defendants, a most compelling prejudice would be required to be shown in order to establish that the trial justice had committed an abuse of discretion in denying the motion to sever.

The evidence in the case at bar was relatively simple and straightforward. The jury would have no significant difficulty in separating out the evidence against each defendant. There were no antagonistic defenses. *See State v. Clarke*, 448 A.2d 1208 (R.I.1982). Cassey testified, and Gilbert did not. In her testimony Cassey denied any knowledge of wrongdoing on the part of Gilbert.

Neither defendant made any statement that implicated the other so that no issue arose under the doctrine of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Consequently we are of the opinion that neither defendant has shown the type of compelling prejudice that would render a denial of his or her motion for severance an abuse of discretion. Indeed, considering the nature of the offenses, the age of the witness, and the burden imposed upon that witness by being required to testify concerning shocking subject matter in two separate trials, the trial justice did not err in denying the motion for severance.

## II

### THE "DOUBLE JEOPARDY" ISSUE

The defendant Gilbert argues that the three counts of the indictment that related to him should have been dismissed on the ground that they were violative of the ban on double jeopardy. Generally, this doctrine, based upon the constitutional imperatives contained in the Fifth Amendment to

the Constitution of the United States, may be succinctly stated as prohibiting that "any person be subject for the same offense to be twice put in jeopardy of life or limb." A parallel provision is found in article I, section 7, of the Rhode Island Constitution and states even more succinctly that "[n]o person shall be subject for the same offense to be twice put in jeopardy."

■■■ Generally a motion to dismiss an indictment on double-jeopardy grounds should be made pursuant to Super.R. Crim.P. 12(b)(2) and (3) within twenty-one days of entry of a not-guilty plea upon arraignment. This plea normally sets forth that the defendant had previously been either acquitted of or convicted of the identical offense with which he is charged in the challenged indictment. In the case at bar, defendant makes no such claim but does argue that the three counts of the indictment that apply to him are so vague as not to give him protection in the event that he should be charged with the same offense at a future time. *See State v. Concannon,* 457 A.2d 1350 (R.I.1983). In attacking these three counts of the indictment on grounds of failure to protect against future jeopardy, defendant Gilbert misconceives the office of an indictment in this jurisdiction. General Laws 1956 (1981 Reenactment) § 12–12–1.4 contains the following requirements for an indictment:

"Contents of indictments, informations and complaints.—An indictment, information or complaint shall be a plain, concise and definite written statement of the offense charged. An indictment, information or complaint which provides the defendant and the court with adequate notice of the offense being charged shall be sufficient if the offense is charged either (a) by using the name given to the offense in terms of either the common law or by statute or (b) by stating the definition of the offense in terms of substantially the same meaning."

Substantially identical language may be found in Rule 7(c). It has long been the law of this state that it is required that the indictment set forth all the elements of the offense, whether in the definition of common law or in the elements set forth in a statute. *State v. Jorjorian,* 82 R.I. 334, 107 A.2d 468 (1954); *State v. Davis,* 39 R.I. 276, 97 A. 818 (1916). There seems little question that in the case at bar the offense of first-degree sexual assault upon a child thirteen years of age or under is set forth in terms of the statutory definition. Each count alleges violation of G.L. 1956 (1981 Reenactment) § 11–37–2, as amended by P.L. 1981, ch. 119, § 1 and § 11–37–3. Since the dates are not specifically set forth, it is obvious that oral proof would be required in order to protect defendant Gilbert against future charges of the same offense. A similar issue was considered in *State v. Jorjorian,* wherein it was flatly stated that the law did not require "that the indictment must be so distinct and minute in its allegations that it will constitute, *without oral proof,* a bar to another indictment." 82 R.I. at 344, 107 A.2d at 473; *State v. Davis,* 39 R.I. at 290, 97 A. at 823. Insofar as it is required that an indictment give such notice of a charge as to enable a defendant to prepare his defense, a defendant pursuant to Rule 7(f) may move for a bill of particulars within ten days of arraignment or at a later time if permitted by the court. Moreover, in this state Rule 16 provides a complete access to discovery of evidentiary details so that a defendant may, virtually without limitation, discover each item of evidence upon which the state intends to rely. Consequently there was no question in the case at bar that defendant Gilbert had ample opportunity to supplement the indictment by evidentiary details and particulars of allegation either through discovery or by requesting a bill of particulars.

His argument that this indictment would not protect him from future jeopardy seems to be based upon a claim that no oral proof should be required. This claim is completely rebutted by the rule laid down in *State v. Jorjorian.* Moreover, in the federal system resort may also be had to evidentiary proof in order to apply the doctrine either of double jeopardy or of collateral estoppel. *See, e.g., Turner v. Arkansas,* 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972); *Harris v. Washington,* 404

U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971); *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The defendant cites *United States v. Panzavecchia*, 421 F.2d 440 (5th Cir.1970) to the contrary. To the extent that this case deviates from the authority cited above, we do not find it either persuasive or controlling.

Consequently we are of the opinion that the trial justice did not err in declining to dismiss the three counts of the indictment relating to the defendant Gilbert on either the vagueness or the "double jeopardy" grounds.

## III

### FAILURE TO RECORD INSTRUCTIONS TO THE GRAND JURY

■ The defendant Gilbert argues that the indictment should have been dismissed as to him because there was a failure to record the instructions given to the grand jury as required by Rule 6(e). The short answer to this contention is that this court has consistently declined to apply a per-se rule of dismissal of an indictment for violations of Rule 6(e). *State v. Fernandes*, 526 A.2d 495, 501 (R.I.1987); *State v. Heredia*, 493 A.2d 831, 834 (R.I.1985). We have stated that dismissal as a sanction for an alleged irregularity during the grand jury proceeding is an extreme remedy that is unwarranted except in limited and very rare circumstances. *State v. Wilshire*, 509 A.2d 444, 448 (R.I.1986). The principle enunciated by the United States Supreme Court in *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), setting forth that when a subsequent petit jury convicts a defendant of the charges set forth in an indictment, any error in the grand jury proceeding connected with the charging decision is rendered harmless beyond a reasonable doubt, has been adopted and applied by this court. *State v. Wilshire*, 509 A.2d at 448. This principle is certainly applicable to the issue raised by defendant Gilbert since no discernible prejudice from this failure to record has been established. Consequently, the trial justice did not err in declining to dismiss the counts of the indictment that related to Gilbert.

## IV

### EVIDENCE OF PRIOR BAD ACTS ON THE PART OF DEFENDANT GILBERT

Gilbert argues that the trial justice committed prejudicial error in allowing evidence to be presented against him that related to his having caused Ted Alan Cassey to engage in sexual acts with his baby sister, Anny, and brother, Marcus, and also upon the family dog, Sparky. He suggests that this evidence was irrelevant to the charges of sexual conduct on his part and that it was highly prejudicial. He also argues that there was a failure on the part of the prosecution to establish reasonable necessity for the introduction of this evidence under the doctrine enunciated in *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978).

■ It is notable that this evidence was admitted without objection posed by Gilbert. No doctrine is more firmly settled in this jurisdiction than the rule that objections to evidence must be raised before the trial court and may not be presented for the first time on appeal. *State v. Estrada*, 537 A.2d 983, 986 (R.I.1988); *State v. Byrnes*, 433 A.2d 658, 670–71 (R.I.1981); *State v. Duggan*, 414 A.2d 788, 791 (R.I. 1980). A party who fails to record a specific objection is determined to have waived his rights on appeal. *State v. Long*, 488 A.2d 427, 432 (R.I.1985). The only exception to the "raise or waive" rule is set forth in *State v. Burke*, 522 A.2d 725, 731 (R.I. 1987). In that case we enunciated a three-part test to qualify for such exception: (1) the error complained of must be more than harmless error, (2) the record must be sufficient to permit a determination of the issue, and (3) counsel's failure to raise the issue at trial must be attributed to a novel rule of law that counsel could not reasonably have known during the trial. *Id.* Moreover, this exception applies only when the defendant's basic constitutional rights are at issue. *State v. Estrada*, 537 A.2d at 987.

■ As in *Estrada,* this case could not qualify as an exception to the "raise or waive" rule. Even if we were to decide that the evidence now challenged implicated defendant's constitutional rights as opposed to a mere evidentiary rule, Gilbert's reasons for failing to object could not satisfy the third prong of the test. Certainly the argument on appeal is not based upon a novel rule of law but upon an established evidentiary principle. As a consequence, this issue is not properly before this court for review.

■ Further, the trial justice limited any prejudice that might result from the admission of such testimony against Gilbert in his final charge to the jury in which he admonished the jurors that evidence concerning sexual acts other than those actually charged against defendant could be considered only for the limited purpose of establishing guilty knowledge, intent, motive, design, plan, scheme, system, or lewd disposition toward the victim in accordance with our prior decision in *State v. Pignolet,* 465 A.2d 176, 181 (R.I.1983). Consequently even if this issue were squarely presented to us, the admission of this evidence would not constitute prejudicial error.

## V

### EVIDENCE OF OTHER BAD ACTS BY DEFENDANT CASSEY

■ Cassey argues that the trial justice committed prejudicial error when he admitted evidence (1) of the filthy condition of Cassey's home, including evidence that her children were covered in fecal matter as well as the presence of roaches and other bugs throughout the house and (2) that Ted had been injured by a knife thrown by Cassey and that said knife wound was allowed to be untreated and had become infected. Cassey argues that since this case was in essence a credibility contest between her and her son, such evidence may well have tipped the balance against her.

In this case defendant Cassey took the stand and testified in her own behalf. She categorically denied the charges of sexual

molestation of her son. She concluded with a statement that "I love him very much." Thus Cassey presented herself as a loving and devoted mother who had done nothing wrong in respect to her child. By so doing, she in effect placed in issue her total relationship to this child. It thus became both necessary and relevant for the state to explore this relationship, including the care and attention that she gave to her children. The fashion in which she acted as a loving mother was not merely a collateral issue. *See State v. Bowden,* 439 A.2d 263 (R.I.1982).

As a consequence the admission of rebuttal testimony by Officer James Ruthowski concerning the condition of her home at 54 Watson Street, Central Falls, on July 16, 1984, was relevant to and probative on the issue of her conduct as a loving mother. This testimony concerning Ted's condition with a festering and infected wound on his chest, the piles of fecal matter, the filthy condition of the children, and the indescribable smell was relevant to the issue that Cassey created when she described herself as a loving mother, thus inevitably creating the inference that she as a loving mother would have been unlikely to commit the disgusting offenses with which she was charged. Admission of this evidence in the circumstances of this case was not erroneous.

Evidence was also introduced on cross-examination that defendant Cassey had lost custody of her son Ted by some official action. Cassey challenges this evidence on the ground of relevance. In light of other evidence presented concerning Cassey's conduct in the home, loss of custody would have been a virtually inevitable result. Inquiry about this further fact, in light of the relevance of other testimony, was at most harmless. However, we believe that this evidence was also relevant on the issue of her self-portrayal as a loving mother. There was no indication that the loss of custody was related to the charges of sexual molestation as opposed to her complete disregard of her obligations to care for these children. The fact that this case was simply a credibility contest provided no ba-

sis for allowing defendant Cassey to present herself as a virtuous mother without contradiction by the state.

## VI

## JURY INSTRUCTIONS

### PRIOR ACTS OF GILBERT AS THEY MIGHT AFFECT CASSEY

 The defendant Cassey argues that the trial justice erred in not being more specific in his instructions to the jury relating to the limited use it might make of prior bad acts on the part of Gilbert that were not charged in the indictment. As part of her argument relating to the failure to grant severance, defendant Cassey suggests that other evidence relating to Gilbert's requiring Ted to engage in sexual play with his brother, Marcus, his sister, Anny, and the family dog could have spilled over into her case and be used by the jury against her.

We have examined the entire charge given by the trial justice and find his outline of the three charges against each defendant as specific as the use of the English language would make possible. Not only did he specify in the most vivid terms the offenses with which each defendant was charged but in addition he sent to the jury room, for the use of the jurors during their deliberations, a breakdown in crystal clear language of the charge against each defendant.

Examining the charge of the trial justice taken as a whole, we conclude that the trial justice did everything humanly possible to separate out the specific offenses with which each defendant was charged. Since the evidence concerning Gilbert's sexual play with the child, his brother and sister and the family dog, did not purport to involve defendant Cassey in any way, there seems no basis to infer that the jury would consider such evidence against Cassey. The encomiums with which the right to jury trial has been expressed, *see, e.g,* *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, *reh'g denied*, 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412 (1968), presuppose that jurors are eminently able to perform the task of determining the facts in a given case, relying upon the evidence submitted. To suggest that jurors in a joint trial would apply evidence obviously inapplicable to one of the defendants in determining the guilt or innocence of that defendant would only support the assumption that jurors are unable to perform the simplest task that may be submitted to them. In our opinion the instructions of the trial justice amply indicated the charges against each defendant and the evidence that should be used in regard to each charge to determine guilt or innocence of the major charge or lesser included offenses.

## VII

### THE MENTION OF THE TERM "CUNNILINGUS"

 The defendant Cassey argues that the spontaneous remark of the trial justice in his charge to the jury in which he defined the term "cunnilingus" was confusing to the jury and highly prejudicial to her. This argument is illustrative of the great importance of viewing the instructions of the trial justice as a whole and not in segmented portions. *E.g., State v. Ferola*, 534 A.2d 173, 175 (R.I.1987).

It is true that the trial justice did purport to define the term "cunnilingus" as an aside in his description of the third count (which did not involve the offense of cunnilingus). In order to understand the trial justice's elucidation of the charges against defendant Cassey, it is necessary to set out this portion of his instructions in total.

"Now we have the three charges against Susan Lee Cassey. The first count charges first degree sexual assault; that the defendant Susan Lee Cassey took the penis of Ted Alan Cassey into her vagina. This is not technically anatomically correct because there are some female organs before the vagina, the vulva, and penetration, the least amount of penetration into that area is sexual penetration—even just barely into the lips of the vulva. Now if you find that the state has proved to you beyond a

reasonable doubt that defendant Cassey forced her son or made her son place his penis, penetrating to any degree into her vaginal area, a child under 13 years of age, then your verdict must be guilty. If you find that the state hasn't proven sufficient penetration, then you can consider the alternative, second degree sexual assault; no penetration but a touching of the vaginal area of Susan Lee Cassey by her son, Ted Alan Cassey, with his penis for the purpose of Susan Cassey's sexual gratification or arousal. If you find that's been proved, then your verdict should be guilty. If you find that hasn't been proved beyond a reasonable doubt, then your verdict in the alternative is not guilty.

"Count 2 charges again first degree sexual assault against Susan Lee Cassey, and the charge specifically is that defendant forced or required her son to put his mouth or tongue into her vaginal area. Again there has to be penetration. If you find there wasn't any penetration, then your verdict should be not guilty, and you consider second degree sexual assault. If you find that the state has failed to prove penetration, but has proved beyond a reasonable doubt that there was a touching of this young boy's lips or tongue in her vaginal area, then you can find the defendant guilty of second degree sexual assault, if she required him to do that for her sexual gratification or arousal. And again, the third alternative is of course not guilty on both the main charge and the alternative charge.

"Finally, the third count, a charge of first degree sexual assault against Susan Lee Cassey. The charge is there that the defendant took the penis of Ted Alan Cassey into her oral cavity. *Incidentally, the placing of lips or mouth or tongue in the vaginal area of a woman is called cunnilingus. So there is a charge of cunnilingus here, whether or not there was penetration, it is cunnilingus.*

"Now on the third count, as I indicated to you, if the state proves to you beyond a reasonable doubt that the defendant

Susan Lee Cassey took the penis of her son into her mouth, that's first degree sexual assault on a child under the age of 13, and your verdict should be guilty. If you find that there was no penetration into her mouth, but there may have been fondling or kissing of the child's penis, then you can consider whether or not that is second degree sexual assault. And for second degree sexual assault, as I've indicated to you, there need be no penetration, but a touching by the defendant of this child's male organ for the purpose of the sexual gratification or arousal of the defendant. So in essence here then on each count you have three alternatives—guilty first degree sexual assault, or guilty second degree sexual assault, or not guilty." (Emphasis of challenged portion added.)

There is no question that the trial judge was accurate in his definition of cunnilingus, which is defined in Black's Law Dictionary, 343 (5th Ed. 1979) as "[a]n act of sex committed with the mouth and the female sexual organ." However, it is also true that this defendant was not charged with cunnilingus but with first-degree sexual assault in the second count. It was this count under which Cassey was charged with *forcing or requiring* her son to put his mouth or tongue into her vaginal area. The trial justice had emphasized the requirement of penetration in his instructions. His definition of cunnilingus was, of course, mere surplusage and did not relate to the specific offense of which Cassey was accused, though it bore some similarity to it. However, in the event that any confusion might have resulted from this definition of cunnilingus, such confusion would have been totally dispelled by the specific verdict form that was submitted by the trial justice to the jurors and was taken by them into the jury room in order that they might make an accurate determination of the charges against each defendant. That portion of the verdict form relating to Susan Lee Cassey is set forth below.

"State v. Susan Lee Cassey

"Count I Charge of First Degree Sexual Assault—that defendant took the penis of Ted Alan Cassey into her vagina.

ALTERNATIVE

2nd ° sexual assault—no penetration, but a touching for the purpose of sexual gratification.

"Count II Charge of First Degree Sexual Assault—that defendant took the mouth or tongue of Ted Alan Cassey into her vagina.

ALTERNATIVE

2nd ° sexual assault—no penetration, but a touching for the purpose of sexual gratification.

"Count III Charge of First Degree Sexual Assault—that defendant took the penis of Ted Alan Cassey into her oral cavity.

ALTERNATIVE

2nd ° sexual assault—no penetration, but a touching for the purpose of sexual gratification."

It may be noted from this verdict form that in regard to each count the form clearly set forth that in the absence of penetration, the jury could not find first-degree sexual assault but only second-degree sexual assault. In the clearest possible terms each lesser included offense included the phrase "no penetration." This taken together with the principal instructions set forth above, made it abundantly clear that in the absence of a finding of penetration beyond a reasonable doubt, the jury could not find defendant Cassey guilty on any of the three counts of first-degree sexual assault. In each instance the jurors had apparently found that penetration had taken place. We are therefore of the opinion that the mention of the definition of cunnilingus viewed in the context of the entire charge and the verdict form that was submitted to the jurors did not cause any reasonable likelihood of prejudicial misunderstanding or confusion on their part.

For the reasons stated, the defendants' appeals are denied and dismissed. The judgments of conviction are hereby affirmed. The papers in the case may be remanded to the Superior Court.

FAY, C.J., did not participate.